[686 NYS2d 759]

In the Matter of ROBERT D. GOULD (Admitted as ROBERT DANIEL GOULD), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 25, 1999

## APPEARANCES OF COUNSEL

*Mady J. Edelstein* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Michael S. Ross* of counsel (*LaRossa, Mitchell & Ross,* attorneys), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to practice law in this State at the

Fourth Judicial Department in 1960. He has maintained an office for such practice within the First Department at all relevant times since then.

In a vigorously contested proceeding, respondent was charged, *inter alia*, with three separate instances of neglect (Charges 1, 3 and 6), as well as a "pattern of neglect" (Charge 9), involving his representation on behalf of three individual clients during the period from 1985 to 1998. Petitioner's appellate Hearing Panel confirmed a Referee's findings of fact sustaining these four charges. A majority of the Panel recommended a one-year suspension; one member dissented and recommended a two-year suspension, based in part upon the belief that respondent had received *two* prior admonitions for neglect. The petition before us seeks confirmation of the findings of fact, and is deemed to seek further confirmation of the majority's adoption of a one-year sanction. Respondent's cross motion seeks disaffirmance of the Referee's findings of fact and conclusions of law on the four charges in question, or at the least, a lesser sanction of public censure.

Respondent is an active sole practitioner in the field of negligence and personal injury, handling hundreds of cases per year. In the first case ("K"), involving medical malpractice in connection with cosmetic and corrective surgery, respondent allegedly failed to pursue parties or witnesses for deposition, failed to comply with pretrial discovery orders, filed a bill of particulars two years late, and misled his client as to his activity on her case. At the hearing, respondent blamed the delay on his client's own vacillation and uncertainty about going forward, and suggested that he had not pressed for depositions for fear that his client, who had a weak case and would not make a good witness because of her manic-depressive condition, would also be deposed. The Referee concluded that respondent's failure to prosecute this lawsuit, and to respond to the client's inquiries about the status of the case, constituted neglect of a legal matter, in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]).

The second case ("G") involved an unwitnessed slip-and-fall on a subway stairway. Respondent testified that he filed a timely notice of claim and then commenced an action against the Transit Authority. He later declined to pursue the case after doubting the client's credibility, owing to her changing versions of the facts. The client convinced the Referee that respondent had never informed her the case was being abandoned.

Again, respondent was determined to have misled his client and neglected this legal matter entrusted to him, in violation of DR 6-101 (A) (3).

In the third case ("McN"), respondent represented the victim of an assault by the owner or employees of a retail store. A year and a half later, respondent advised the client in two separate letters that his lawsuit was not being pursued for several reasons: the police and hospital reports revealed no serious injury, the potential defendant had neither assets nor insurance, and pursuing such litigation might jeopardize the client's chances for success in other unrelated injury claims. Respondent waived fees and disbursements, and reminded the client about the three-year Statute of Limitations for negligence, should he wish to consult another attorney. Respondent testified that the case was not worth pursuing because his client had not been honest with the examining doctors about a previously existing condition, and that the police report of the incident had not been favorable. The Referee found these reasons inconsistent with the reasons respondent had given his client in writing. He further chided respondent for not mentioning in his correspondence with the client that the one-year Statute of Limitations for assault had already run, even though respondent testified that it was his strategy from the start to pursue a cause of action for negligence rather than assault, and that he had explained as much to the client. The Referee concluded that respondent had once again neglected a legal matter entrusted to him (DR 6-101 [A] [3]) by failing to act in a timely fashion or to advise his client of the applicable Statute of Limitations.

In sustaining these three charges, the Referee concluded that respondent's pattern of neglect additionally amounted to conduct adversely reflecting on his fitness to practice law, in violation of DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]). Even if some or all of these cases lacked merit, it was respondent's duty to withdraw in a timely fashion.

Respondent urges that his conduct warrants no worse than a public censure. In mitigation, he cites his 36 years before the Bar, during which he has handled thousands of personal injury cases at a rate of about 200 per year, the fact that his law practice is the only source of income for his family, his *pro bono* work as an upstate village justice, and his service as an arbitrator and mediator, and as a Bar Association ethics counselor. Petitioner's staff recommended a two-year suspension, citing as an aggravating factor a previous admonition in 1992

for inaction and delay in representing a client in personal injury litigation in the early 1980s. The Referee rejected respondent's reliance on his many years of practice as a mitigating factor, ruling that this was even more reason why he should have known better. Most aggravating, he concluded, was respondent's determined refusal at the hearing to acknowledge any wrongdoing on his part.

The findings of fact are confirmed, as expanded upon herein.

In the "K" case, respondent obtained and sent to the hospital authorizations for medical records, arranged for forensic photographs to be taken, and timely filed a notice of claim with the City and a summons and complaint. This was an unstable client who had several times changed her mind about wanting to proceed, possibly due to her chronic, health-related stress, which is documented in the record.

Respondent arguably had good reason to doubt the strength of client "G" as a credible witness, owing to her changing versions of how the accident had occurred. (She first stated that she had slipped on a candy wrapper or other debris; after testifying to this effect at deposition, she then abandoned that theory and alleged that her fall had been caused by a faulty banister.) According to respondent, when he expressed reservations about the case at a meeting with "G" in his office in 1986, she hurled an ethnic epithet at him and threatened to "fix" him. It was at this point, doubting the merits of the case as well as his client's credibility, that respondent instructed his staff to close out the file and notify the Transit Authority that the firm was no longer representing "G." Ten years later, "G" wrote to respondent, inquiring about the status of her case. After several contacts by letter and telephone, "G" scheduled an appointment with respondent, which she failed to keep.

Even though the "McN" case stemmed from an alleged assault in a retail establishment, respondent's initial evaluation of the case was that negligence would be the better strategy to pursue. This was reflected in the retainer agreement. It later became clear that "McN" had three other personal injury lawsuits pending, represented by separate lawyers in each—a fact not initially disclosed to respondent. This knowledge, together with the relatively slight nature of the injury as revealed in the police report of the instant case, led respondent to suspect that "McN" was trying to piggyback his injuries for multiple recovery. He ultimately notified "McN" that he was withdrawing from the case, while the three-year Statute of Limitations for negligence was still viable. In his letter of

November 18, 1997, respondent summarized that the police report recorded "McN" had merely been "scratched on the neck and suffered abrasions" from the altercation, and that the hospital found "no serious injury and did not admit you."

In each of these cases, respondent had good reason to withdraw. The first depended heavily on a client who would have made a very poor witness. In the second and third, the credibility of his clients was so open to question that the cases bordered on fraud. Still, respondent could have been more diligent in communicating with these clients, and he concedes as much. Although each instance might be viewed as neglect in the broader sense, none of the failures of communication, when viewed in context, rises to the level of neglect that would warrant the severe sanction of disruption of respondent's practice. Contrary to petitioner's allegations, respondent has shown remorse about these lapses in communication. His vigorous defense on the facts should not be held against him as an aggravating factor. Nor do the three cases together, even when viewed in the light of a *single* admonition stemming from the early 1980s (for delay in forwarding a file to new counsel), warrant a conclusion that there has been a pattern of neglect.

What constitutes neglect is often an amorphous concept (see the commentary on DR 6-101 [A] [3] in Simon's Code of Professional Responsibility Annotated, at 331 [1999 ed]), and the appropriate sanction depends upon the circumstances of the case. There is ample precedent for a sanction less severe than suspension from practice in certain cases of neglect, even where there has been a prior admonition (*Matter of Erda*, 209 AD2d 147; *see also*, *Matter of Ackerman*, 231 AD2d 192). Respondent's professional shortfall here was, in each of the cases, his failure to move formally, on proper papers, to be relieved of his representation. A finding of neglect, only to this limited extent, is sustained.

Accordingly, petitioner's motion should be granted only insofar as to confirm the Hearing Panel's unanimous findings of fact, as modified herein, and otherwise denied. Charge 9, alleging a pattern of neglect, should be dismissed. The cross motion should be granted insofar as to impose a sanction of public censure for respondent's neglect of these proceedings, based upon additional findings of fact, and otherwise denied.

WILLIAMS, J. P., TOM, WALLACH, MAZZARELLI and ANDRIAS, JJ., concur.

Petition granted only to the extent of confirming the unanimous findings of fact of the Hearing Panel, as modified by the

Opinion Per Curiam, and otherwise denied, and dismissing Charge 9, all as indicated. The cross motion granted to the extent of imposing a sanction of public censure, and otherwise denied.