[800 NYS2d 708]

In the Matter of CLAUDE HENRY KLEEFIELD, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 20, 2005

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel Disciplinary Committee*, New York City (*Joseph J. Hester* of counsel), for petitioner.

*Hinshaw & Culbertson (Hal Lieberman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Claude Henry Kleefield was admitted to the practice of law in the State of New York by the First Judicial Department on June 29, 1954, and at all times relevant to this proceeding has maintained an office for the practice of law within this Department.

On November 19, 2003, based on a complaint received from a foreign national who engaged respondent to represent him in his application for political asylum, the Departmental Disciplinary Committee charged respondent with professional misconduct consisting of handling a legal matter that he knew or should have known he was not competent to handle, neglecting a matter entrusted to him, failing to carry out a contract of employment with a client for professional services, and, having withdrawn from employment, failing to refund promptly the fee paid in advance that had not been earned, in violation of Code of Professional Responsibility DR 6-101 (a) (1) and (3), DR 7-101 (a) (2) and DR 2-110 (a) (3) (22 NYCRR 1200.30, 1200.32, 1200.15). Respondent served an answer and an amended answer, and the parties executed a prehearing stipulation pursuant to 22 NYCRR 605.12 (d).

The undisputed facts, according to the stipulation, are as follows. During the pendency of his appeal to the Board of Immigration Appeals (BIA) from the denial by an immigration judge (IJ) in New York City of his application for political asylum, the complainant engaged respondent as substitute counsel to represent him before the BIA. Respondent executed a notice of appearance, dated October 11, 2000, which reflected a Georgia address for the complainant. By decision dated July 15, 2002, the BIA affirmed the IJ's decision, stating that it was therefore the final agency determination. A copy of the decision was mailed to respondent as counsel of record.

Respondent's own records show that he mailed notification of the BIA decision to the complainant's Brooklyn address only. (That the complainant never received this notification is a fact in dispute.) When the complainant called respondent for a status check on July 24, 2002, respondent informed him of the BIA decision and advised him to appeal it in federal court (i.e., petition for review of the IJ's decision). Respondent told the complain-

ant that the fee for such an appeal would be $5,000 and that he required a $2,000 deposit. The complainant sent respondent $2,000 the next day. Two days later, he called respondent, who told him that he had received the $2,000, that he would start working on the appeal, and that the appeal would be filed before August 14, 2002 (the last day it could be filed under the governing law). On that day, respondent also deposited the $2,000 into his bank account.

On or about September 12, 2002, the complainant wrote to respondent requesting a copy of the appeal. Respondent replied, by letter dated September 20, "I did not prepare an appeal for the United States Court of Appeals for the Second Circuit because you live in Georgia and not in New York at the present time." He added, "As I told you on the telephone, I am prepared to return the $2,000 to you as I am not authorized as an attorney to practice in Georgia. There was too little time left to make other arrangements." However, respondent did not return the money to the complainant at that time.

Pursuant to United States law and regulation, the appeal of the complainant's matter was to be filed in the Second Circuit, the circuit in which the IJ sat, and therefore it is irrelevant whether or not respondent was authorized to practice law in Georgia. (This statement is set forth in the stipulation as an undisputed fact.)

The complainant filed his complaint with the Committee on February 3, 2003. He complained that respondent failed to respond to two additional letters, the first dated October 9, 2002, and the second dated October 28, 2002. (That the complainant never received a response, written or otherwise, to his October 28 letter is another fact in dispute.) It was not until August 2003, after he had been deposed in this disciplinary matter, that respondent returned the complainant's $2,000 deposit.

Based on the foregoing and following a hearing on culpability, a Referee found that by failing to timely file a petition for review of the IJ's decision, respondent neglected a legal matter, that he failed to carry out a contract of employment with a client for professional services, and that he failed to refund promptly the unearned fee deposit. She dismissed for lack of evidence the charge that respondent handled a legal matter that he knew or should have known he was not competent to handle.

A sanctions hearing followed at which respondent's treating psychiatrist testified that respondent, now 76 years old, suffers from Parkinson's disease, that he is being treated for depression

resulting from his physical ailments, and that during the summer of 2002 he suffered attacks of vertigo. As to the effect of such attacks, she testified that after an episode of vertigo ends, having interrupted a person in the middle of an activity, the person may start doing something else, in the mistaken belief that he or she is resuming the activity that was interrupted. However, she explained that there is no memory loss associated with vertigo. The psychiatrist testified that respondent is competent to practice law and that the Parkinson's disease has no effect on his mental ability, although his medications for the Parkinson's and the depression can result in lethargy. The Referee noted in her report that such lethargy was apparent at the hearing, which had to be adjourned for that reason.

When the hearing resumed, respondent testified, admitting that he missed the statutory deadline for filing the petition for review and stating that he was taking steps to improve his office procedures. The Referee commented, however, that "because of the respondent's lethargy and sleepiness at the previous hearing, this court was concerned that, although the respondent was well intentioned, his physical condition and medications would prevent him from effectively practicing law and put his clients in jeopardy, especially since he was a single practitioner." The Referee asked counsel for both parties for independent medical testimony on this issue, but both declined to offer any such evidence. In any event, two attorneys who are of counsel to respondent testified that they are available to help and do help respondent handle his case load.

The Committee presented evidence that the complainant's matter is not the first that respondent has neglected. Respondent received a letter of admonition dated February 1, 1995 for neglecting to file a written brief in support of a client's appeal to the BIA. He received a letter of admonition dated October 7, 2002 for neglecting two client matters and failing to carry out a contract of employment. The Committee sought a suspension of 18 months. Respondent urged that he be publicly censured.

The Referee found that in cases similar to respondent's, where there were neglect and prior admonitions, this Court imposed public censure for neglect (*see e.g. Matter of Gould*, 253 AD2d 233 [1999]; *Matter of Erda*, 209 AD2d 147 [1995]). She found that respondent neglected his client, failed to timely file the petition for review and failed to return the fee promptly, but that he was ill, he admitted his wrongdoing and he was not motivated by personal gain or animus. In view of these factors and the

case law, the Referee recommended that respondent be publicly censured.

A Hearing Panel "reluctantly" agreed with the Referee's recommended sanction, for different reasons. The Panel did not agree that the record supported respondent's mitigation claims. It found that the evidence of the effect of respondent's illness on his ability to function at the time of the neglect was "thin." It found that the fact that he admitted his misconduct, "eventually," was not mitigating, in light of the "equivocal" testimony he gave at his deposition and his "tortured" excuse for failing to timely file the petition for review, which he "finally" conceded, at the hearing before the Referee, was groundless. The Panel observed that, given the nature of respondent's misconduct, the lack of genuine mitigation, and the two previous admonitions, it would have recommended a suspension. However, "on constraint" of this Court's imposition of public censure on attorneys in other neglect cases on facts similar to, or more egregious, than these, the Panel confirmed the Referee's recommended sanction.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.4 (d), confirming the findings of fact and conclusions of law set forth in the Hearing Panel's report and publicly censuring respondent.

We conclude that the record fully supports the Hearing Panel's findings of fact and conclusions of law. The evidence adduced in mitigation does not demonstrate a connection between respondent's episodes of vertigo or other medical conditions and his neglect of his client's legal matter or his failure to refund promptly the deposit. Nor was respondent's admission of misconduct forthright. Indeed, the Panel's characterization of respondent's deposition testimony—and we would include in this characterization his testimony at the hearing before the Referee—as "equivocal" and its description of his excuse for failing to timely file the petition for review as "tortured" are amply justified. In addition, his testimony concerning reform of his office procedures lacked substance, and the evidence indicates that the two attorneys who assist him work on a per diem basis only, making court appearances when he calls them, and do not in fact help him oversee his high-volume practice.

This Court has imposed periods of suspension on attorneys for neglect of legal matters where, as here, the attorneys have received prior admonitions and the mitigating evidence is not strong. For example, in *Matter of Teschner* (7 AD3d 46 [2004]),

we imposed a three-month suspension on an attorney who had neglected two legal matters and had received two prior admonitions for neglect. While there was evidence that he suffered from psychological and personal problems, including alcoholism, we found that his alcohol abuse "may have been a factor" in the neglect of only one of the matters (at 50). In *Matter of Chasin* (183 AD2d 366 [1992]), the respondent was a 72-year-old attorney who had neglected three legal matters and had received two prior admonitions for neglect. Although he presented evidence that he had been suffering from depression for 10 years, that he had not taken a vacation in 10 years, and that his father's death had left him unable to come to the office for 20 days, he failed to present any expert testimony to corroborate his claimed long-standing depression or to demonstrate a connection between his claimed emotional problems and his neglect of the legal matters. Nevertheless, we found that, even accepting his contention of psychological disability as true, the respondent's neglect, which occurred "despite two prior admonitions for the neglect of other cases," warranted a three-month suspension (183 AD2d at 368).

Given the nature of respondent's misconduct and the prior admonitions issued for neglect, we find that the appropriate sanction is a three-month suspension.

Accordingly, the motion for an order confirming the Hearing Panel's findings of fact and conclusions of law should be granted. The recommended sanction of public censure should be disaffirmed, and respondent should be suspended from the practice of law for a period of three months.

MARLOW, J.P., ELLERIN, NARDELLI, WILLIAMS and SWEENY, JJ., concur.

Respondent suspended from the practice of law in the State of New York, for a period of three months, effective October 20, 2005 and until further order of this Court.