[846 NYS2d 22]

In the Matter of JOHN M. IOANNOU (Admitted as JOHN MICHAEL IOANNOU), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 15, 2007

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Richard M. Maltz* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent John M. Ioannou was admitted to the practice of law in the State of New York by the Second Judicial Department on August 3, 1983. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

On or about June 29, 2005, the Departmental Disciplinary Committee served respondent with charges* alleging that: (1) in the *Leifer* matter, he withdrew the legal fee portion of a personal injury settlement from his escrow account before the resolution of the proper division of the legal fee between him and former attorney Leifer in violation of DR 9-102 (b) (4) (charge 2); and (2) failed to promptly notify Leifer of his receipt of the settlement funds to which Leifer had an interest in violation of DR 9-102 (c) (1) (charge 3). On or about October 19, 2005, supplemental charges were served upon respondent which alleged that: (3) in the *Campos* matter, he neglected a personal injury matter by neither opposing the dismissal motions by two defendants in the multiple defendant matter nor seeking the restoration of the actions in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30 [charges 9 and 10]); and (4) by engaging in the misconduct described in the above charges, respondent engaged in conduct that adversely reflects on his fitness as a lawyer in violation of DR 1-102 (a) (7) (charge 11). Respondent admitted his liability to all but charge 11, arguing that it was cumulative.

After conducting a hearing, the Referee sustained charge 11, finding that respondent's careless and disorganized manner in

---

* The Committee also charged respondent with violations of Code of Professional Responsibility DR 9-102 (a) and DR 1-102 (a) (4) and (5) (22 NYCRR 1200.46, 1200.3), but these charges were withdrawn in a prehearing stipulation.

running his office which resulted in not receiving important letters, motions, and judgments sent to his office regarding a client's interest, but not actually brought to his attention, adversely reflected on his fitness as an attorney.

At the mitigation hearing, respondent, a solo practitioner, testified that his neglect and negligence in the *Leifer* and *Campos* matters were due to distractions from his wife's serious illness which kept him away from the office for considerable periods of time. He further testified that to avoid future incidents of neglect, his office caseload has been reduced from 700 files to approximately 200 files, a more experienced calendar clerk has been hired to track his cases, and a system has been set up to promptly review all mail and telephone calls from clients. Respondent also testified that he performs pro bono legal work and donates money to a number of charitable organizations. In addition to respondent's testimony, four character witnesses testified that respondent's reputation in the community for truth and honesty was excellent or very good.

In aggravation, the Committee introduced two prior admonitions issued to respondent: (1) in July 2003, respondent was found to have attempted to deceive a law firm hired by a former client to sue him for malpractice in violation of DR 1-102 (a) (4); and (2) in May 2004, respondent disregarded an attorney-substitution agreement that he had made with an outgoing attorney on a matter he was taking over in violation of DR 9-102 (b) (4) and DR 1-102 (a) (7).

The Hearing Panel confirmed the Referee's report sustaining the charges and adopted the recommendation of public censure.

By a petition dated October 5, 2006, the Committee sought an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) confirming the Hearing Panel's determination and respondent's public censure. Previously, during oral argument before the Hearing Panel, respondent averred that he would attempt to assist Ms. Campos, the client whose case he had neglected, in reestablishing her workers' compensation benefits. Thereafter, respondent advised the Committee that his office had reached an agreement with the worker's compensation insurance carrier involved with Ms. Campos' case and assured the Committee that his office would "personally satisfy the outstanding worker's compensation lien in the amount of $17,500 on the [Campos matter] so the complainant may continue to receive future worker's compensation benefits." By supplemental affirmation dated January 16, 2007, the Committee advised the Court that

despite being granted extensions by the Committee to fulfill his promise to pay, respondent had still not paid the worker's compensation lien.

On January 26, 2007, respondent filed a reply affirmation stating that he had issued a check for $17,500 to lienholder Gallagher Basset Services (GBS) on January 22, 2007. When the Committee contacted GBS, GBS confirmed that it had received respondent's check, but for administrative reasons there would be a significant time interval before the check would clear.

On March 21, 2007, the Committee learned that respondent's January 2007 check had been dishonored. The Committee immediately contacted respondent who asked to be given two days to pay GBS by bank check. However, two days later, respondent had still not paid GBS or contacted the Committee.

On April 4, 2007, the Committee received a letter from respondent, wherein he explained that, in the latter part of January 2007, he had closed the account on which the dishonored check was drawn and that was why the check was dishonored.

By unpublished order entered May 9, 2007, this Court ordered that the Committee's petition to confirm be held in abeyance, and remanded the matter to the Committee for further proceedings with respect to the dishonored check. In particular, this Court directed that the Committee conduct an inquiry regarding, but not limited to, the following issues: (1) the type of account on which the original dishonored check to GBS was drawn; (2) the date the check was drawn; (3) the date the check was actually forwarded to GBS; (4) the date GBS presented the check for payment; (5) the date respondent's account on which the check was drawn was closed; (6) the date GBS was notified of the default; and (7) why respondent did not ensure that the check to GBS had cleared before he closed the account on which it was drawn.

In response to this Court's order, respondent explained in an affidavit dated August 3, 2007 that he was previously mistaken about having closed the account on which the dishonored check was drawn and that, in fact, the check to GBS that was ultimately dishonored, dated January 22, 2007, was issued by him from his operating account, and not an escrow account. According to him, the operating account was new and funds were not deposited into the account until January 23; on that date the opening balance was about $50,307. Respondent submitted proof showing that his operating account had sufficient funds to cover the GBS check when he issued it and until February 6,

2007 and averred that he did not anticipate GBS' late presentation of the check. Respondent stated that when he was notified that it had bounced, he forwarded a replacement check shortly thereafter, and he asked that this Court censure him as recommended by the Hearing Panel. The Committee's separate investigation concurs with respondent's affidavit.

We find that, in light of the prehearing stipulation and the evidence presented at the liability and mitigation hearings, the findings of facts and conclusions of law regarding respondent's misconduct are supported by the record, and should be confirmed. Public censure is the appropriate sanction under the circumstances (*Matter of Lenoir*, 287 AD2d 243 [2001]), despite the fact respondent received two prior admonitions, given all of the mitigation evidence, including respondent's pro bono work, that his wife's illness often caused him to be absent from his office during the time of his misconduct, his remorse for his nonvenal wrongdoing, reduction in his caseload and multiple alterations to his office procedures to prevent any future neglect, and that he made amends to Leifer, the complainant (*see e.g. Matter of Marrin*, 207 AD2d 239 [1995]; *Matter of Gould*, 253 AD2d 233 [1999]). Although respondent's payment of the worker's compensation lien was delayed, censure is still appropriate.

Accordingly, the Committee's petition should be granted, the Referee's findings of fact and conclusions of law confirmed, and respondent publicly censured.

ANDRIAS, J.P., FRIEDMAN, SULLIVAN, NARDELLI and MALONE, JJ., concur.

Respondent publicly censured.