[932 NYS2d 52]

In the Matter of JOHN M. IOANNOU (Admitted as JOHN MICHAEL IOANNOU), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 10, 2011

**APPEARANCES OF COUNSEL**

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin E.F. O'Sullivan* of counsel), for petitioner.

*Richard M. Maltz*, for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent John M. Ioannou was admitted to the practice of law in the State of New York by the Second Judicial Department on August 3, 1983 under the name John Michael Ioannou. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee (the Committee) submits for our consideration three charges against respondent, two other charges (charges one and three) having been dismissed by both the Referee and the Hearing Panel. The charges that remain outstanding are as follows:

Charge two alleges that, over a period of several years beginning in 2000, respondent failed to timely file retainer agreements and closing statements in 59 matters as required by 22 NYCRR 603.7, thereby engaging in conduct prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge four alleges that respondent solicited and accepted a $50,000 loan from a client in violation of DR 5-104 (a) (22 NYCRR 1200.23 [a]).

Charge five alleges that respondent's conduct as set forth in the above charges reflects adversely on his fitness to practice law, thereby constituting a violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).*

Both the Referee and the Hearing Panel sustained charge two. The Referee recommended dismissal of charges four and five, but the Hearing Panel sustained these charges. With regard to the sanction to be imposed, both the Referee and the Hearing Panel, notwithstanding their differing conclusions of law, recommended that respondent be suspended from the practice of law for three months. The Committee now moves for an order, pursuant to 22 NYCRR 603.4 (d) and 605.15 (e), confirming the Hearing Panel's findings of fact and conclusions of law and suspending respondent from the practice of law for no less than three months.

The Referee and Hearing Panel correctly sustained charge two based on evidence establishing that respondent engaged in

---

* The charges at issue are based on the former Code of Professional Responsibility, which was in effect at the time of the relevant events.

conduct prejudicial to the administration of justice, in violation of DR 1-102 (a) (5), by manifesting a consistent pattern of failing, without excuse, to comply with his obligation to file retainer agreements and closing statements in contingency fee cases (*see Matter of Boter*, 46 AD3d 1 [2007]; *Matter of Schmell*, 27 AD3d 24 [2006]; *Matter of Lenoir*, 287 AD2d 243 [2001]). Given respondent's failure to file the required documentation in 59 cases over a period of several years, his attempt to cure the omissions by making nunc pro tunc filings in February 2008— years after the filings were due—cannot be deemed a defense or mitigating factor. While respondent attributes the failure to make the required filings to "sloppy" work by an employee, this was no excuse, as responsibility for filing the required documentation always rests with the attorney.

Charge four, based on respondent's solicitation and acceptance of a $50,000 loan from a former client, was, to reiterate, rejected by the Referee but sustained by the Hearing Panel. The difference of opinion between the Referee and the Hearing Panel over charge four does not concern the material facts (which are essentially undisputed) but whether DR 5-104 (a), which governs transactions between lawyer and client, should be applied to a transaction between a lawyer and a former client under the particular circumstances presented here.

DR 5-104 (a) provides:

> "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless:

> "(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

> "(2) The lawyer advises the client to seek the advice of independent counsel in the transaction; and

> "(3) The client consents in writing, after full disclosure, to the terms of the transaction and to the lawyer's inherent conflict of interest in the transaction."

As found by both the Referee and the Hearing Panel, in August 2002, respondent solicited and accepted an unsecured,

interest-free loan of $50,000 from Vartan Harutunian, a former client. Respondent had represented Harutunian, a former police detective, as plaintiff in a lawsuit arising from a motorcycle accident in which Harutunian had been seriously injured. Respondent had settled Harutunian's personal injury action for $4.5 million in August 2001, a year before the loan in question was made. In July 2002, only about two weeks before respondent solicited the loan, Harutunian called respondent for advice about how to respond to a demand for reimbursement from his medical insurance carrier. Respondent advised Harutunian to negotiate with the insurer but had no further involvement in that matter.

It is undisputed that the terms of the August 2002 loan were not reduced to writing; that respondent did not advise Harutunian to consult with independent counsel concerning the loan; and that respondent did not obtain Harutunian's written consent to the terms of the loan or to respondent's inherent conflict of interest in the transaction. It is also plain that the terms of the loan—no collateral, no interest, and no due date for repayment—were objectively unfair to Harutunian.

The Referee found that Harutunian was not respondent's client in August 2002, when the loan was made. The Referee further found that Harutunian "was not looking to [r]espondent for any legal representation or advice in connection with the loan (or anything else) in August 2002," and that there was no evidence "from which I could find that, an entire year after their attorney-client relationship ended, it was reasonable for Harutunian to conclude that [r]espondent was representing his interests in that transaction" (internal quotation marks and additional brackets omitted). Accordingly, the Referee concluded that the August 2002 loan was not a violation of DR 5-104 (a), and therefore recommended the dismissal of charge four.

The Hearing Panel, disagreeing with the Referee, found that, "given the prior professional relationship, it was reasonable for Harutunian to expect that [r]espondent would exercise his professional judgment for Harutunian's protection" in the loan transaction, and therefore recommended that charge four be sustained. The Hearing Panel concluded that respondent "exploited the gratitude and trust that had developed between Harutunian and [r]espondent while [r]espondent was representing Harutunian during the litigation over Harutunian's accident."

We agree with the Hearing Panel that, under the particular circumstances of this case, respondent's conduct violated DR

5-104 (a), notwithstanding that Harutunian was no longer his client at the time of the loan transaction. Although the attorney-client relationship had terminated with the settlement of Harutunian's personal injury action in August 2001, the Hearing Panel correctly observed the presence of a number of factors supporting its determination that, at the time he lent respondent $50,000 in August 2002, Harutunian still "reasonably expect[ed] [r]espondent to exercise professional judgment for the protection of [his] interest," so as to render DR 5-104 (a) applicable. The relevant factors are as follows: (1) in August 2002, "Harutunian still regarded [r]espondent as his lawyer," as demonstrated by Harutunian's call to respondent for advice about his insurer's demand for reimbursement during the previous month; (2) respondent asked Harutunian for the loan in his law office, "amidst the trappings of their attorney-client relationship"; (3) respondent knew that Harutunian was in a position to lend a substantial sum of money as a result of having represented him in the personal injury action; (4) Harutunian (who said he had never before lent anyone more than $20) was willing to make the loan largely because of the attorney-client relationship; (5) Harutunian's desire to help respondent (who represented that he needed the loan to deal with a tax problem) was "very likely related to the gratitude that he felt towards [r]espondent for the excellent recovery [r]espondent had obtained for him a year earlier"; and (6) Harutunian was willing to make the loan without consulting another attorney because of his trust in respondent arising from the attorney-client relationship.

The Referee found that respondent had not violated DR 5-104 (a) based primarily on Harutunian's testimony that he did not ask respondent for legal advice concerning the loan, and on respondent's testimony that he did not offer Harutunian any advice concerning the loan. However, contrary to the Referee's view, that legal advice was neither expressly requested nor offered does not necessarily mean that Harutunian did not reasonably "expect[ ] [respondent] to exercise professional judgment . . . for [his] protection" in connection with the transaction (DR 5-104 [a]). The Hearing Panel properly determined that the particular circumstances of this case manifest Harutunian's implicit trust and confidence in respondent, and that respondent exploited that trust and confidence to obtain a substantial loan on terms unfair to his former client.

We emphasize that we are not holding that DR 5-104 (a) will apply to every transaction with a former client. What we are

holding is that DR 5-104 (a) may apply to a transaction between a lawyer and a former client if the circumstances are such that the former client reasonably "expects the lawyer to exercise professional judgment therein for the protection of the [former] client." Determining whether such circumstances existed in a given case will necessarily be a highly fact-specific inquiry. In this case, we conclude that the circumstances rendered it imperative for respondent to comply with DR 5-104 (a) in entering into a transaction with this particular former client, given, among other things, the former client's relative lack of sophistication in business matters, the personal nature of the former professional relationship, the importance to the former client of the matter in which respondent represented him, and the fact that the former client had sought respondent's advice on a matter related to the former representation only about two weeks before respondent proposed the transaction. We note that this Court's decision in *Matter of Gold* (240 AD2d 74 [1998]) appears to support application of DR 5-104 (a) to a transaction between a lawyer and former client (*see id.* at 78 [in a reciprocal discipline proceeding, finding that the lawyer violated DR 5-104 (a) by "borrowing $57,000 from a former client"]; *cf. Matter of Riccio*, 75 AD2d 687, 688 [1980] ["an attorney's failure to repay moneys borrowed from a former client is not professional misconduct *unless the moneys were obtained as the result of overreaching or manipulation of the former relationship*"] [emphasis added]). We reject respondent's argument that it offends due process to apply DR 5-104 (a) to a transaction in which an attorney takes advantage of the trust and gratitude of a former client, as respondent plainly did in this case.

The Referee recommended dismissing charge five (conduct adversely reflecting on fitness to practice law, in violation of DR 1-102 [a] [7]) because he found that the conduct underlying charge two, although constituting a disciplinary violation, was not so egregious as to reflect adversely on respondent's fitness to practice law, and he had dismissed all other charges. The Hearing Panel, which sustained charge four, recommended that charge five be sustained on the ground that the conduct underlying charge four "demonstrated an unfitness to practice law." We agree with the Hearing Panel that respondent's conduct relating to the loan reflects adversely on his fitness to practice law. Accordingly, we sustain charge five.

Finally, taking all relevant circumstances into account, including respondent's prior disciplinary history (*see Matter of Ioan-*

*nou*, 47 AD3d 65 [2007]), we agree with the Hearing Panel that the appropriate sanction for respondent's misconduct is a three-month suspension from the practice of law.

Accordingly, the Committee's motion should be granted, the Hearing Panel's findings of fact and conclusions of law confirmed, and respondent suspended from the practice of law for a period of three months, effective 30 days from the date of hereof.

ANDRIAS, J.P., FRIEDMAN, SWEENY, MOSKOWITZ and MANZANET-DANIELS, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three months, effective December 10, 2011.