Matter of Asher (2025 NY Slip Op 06651)

Matter of Asher

2025 NY Slip Op 06651

Decided on December 02, 2025

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 02, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
Justice Presiding

Motion No. 2025-04509|Case No. 2025-02082|

[*1]In the Matter of Roberta Dorf Asher an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Roberta Dorf Asher (OCA Atty Reg. 1945971), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Roberta Dorf Asher, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on August 3, 1983.

Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Diana Neyman, of counsel), for petitioner.
J. Richard Supple, Jr., Esq., for respondent.

Per Curiam 

Respondent Roberta D. Asher was admitted to the practice of law in the State of New York by the Second Judicial Department on August 3, 1983, under the name Roberta Dorf Asher. Respondent maintains a registered address in the First Judicial Department.
In April 2025, the Attorney Grievance Committee (the AGC) served respondent with a notice and petition of charges (seven charges) alleging professional misconduct stemming from her mishandling of three separate client matters. From approximately 1993 and at all times relevant here, respondent practiced law at Asher & Associates, PC of which she is the sole proprietor and ultimate supervisor of all pending cases.
In 2003, M.M. retained respondent's firm to represent him in a lawsuit filed in Supreme Court, Bronx County alleging unlawful arrest. After commencing the case, respondent did not file a request for judicial intervention for approximately seven years. During the pendency of the case, there were years-long periods when respondent and her firm had no contact with M.M.. The lack of contact was at times due to M.M's lack of stable living arrangements and/or incarceration(s), and also due to the firm's lack of affirmative steps to locate him. Eight years after being retained, respondent produced M.M. for a deposition. The defendants did not appear for depositions for three additional years, until November 2014 when their first witness testified. During this three-year period, the firm moved to strike the defendants' answers in March 2014 at which point it came to light that the defendants' second witness was on medical leave and could not appear. The firm did not make additional motions to strike, although they could have. In June 2019, and again in January 2020, respondent moved for contempt against the second witness. Both motions were denied as by then the witness had retired from the defendant agency and was allegedly no longer under its control. The matter remains ongoing with the note of issue only having been filed in February 2025.
A.B. retained respondent in December 2021 to prosecute her personal injury action which the firm filed in Supreme Court, Bronx County. In September 2022, A.B.'s daughter J.B. informed the firm that her mother had died three months prior, and that J.B. was interested in proceeding with her late mother's case. J.B. sent the firm A.B.'s death certificate in November 2022. Between that time and April 2023, respondent did not advise the court or opposing counsel of her client's death, which would have resulted in an automatic stay of proceedings pending substitution of an administrator as plaintiff. The defendants thus continued to engage in discovery and motion practice. In April 2023, the firm finally notified the court that A.B. had died. The matter was marked stayed in June 2023 and remains so marked to date without a final disposition.
At some point after A.B.'s death, respondent determined that the firm would not continue to act in the matter on behalf of A.B.'s estate. She did not communicate that decision to J.B. until May of 2023. In August 2025, the firm advised opposing counsel and the court that insofar as it did not represent A.B.'s estate, inquiries regarding appointment of an administrator should be made directly to J.B.
In May 2018, R.S. retained respondent's firm to represent him as a plaintiff in a personal injury case. In March 2021, R.S. died from causes unrelated to his injuries and/or accident. Following his death, R.S.'s spouse D.P. took her late husband's death certificate and their marriage certificate to the firm with the idea of continuing the case in the name of his estate. For two years, neither respondent nor anyone else from the firm contacted D.P. in connection with the status of R.S.'s case, despite D.P.'s inquiries, and respondent failed to petition for Letters of Administration.
In 2022, the defendant's counsel sent respondent two letters requesting the status of the Surrogate's Court proceedings. Respondent did not respond. Respondent instructed a firm associate to work with D.P. to have her appointed as Administrator of her husband's estate, but the associate did not accomplish same before leaving the firm. Upon the associate's departure, a paralegal was hired to work on that task (and perform similar work in other matters), but she did not accomplish same either. In February 2024, approximately three years after her client's death, respondent and/or the firm filed an Administration Petition. In August 2024, the Kings County Surrogate's Court's Clerk issued a request for amended petition, citing the need for various corrections. After the AGC filed the petition of charges, respondent and/or the firm filed an amended petition with the court on May 28, 2025, four years after R.S.'s death.
Respondent admits that her actions violated all seven charges alleged in the petition of charges. As to charge 1, respondent's failure to provide prompt and diligent representation to M.M., causing M.M.'s matter to be delayed and remain pending for 22 years, without any current prospect of a resolution in the near future, violated the Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.3(a) and 1.3(b). As to charge 2, she failed to keep M.M. informed about the status of his matter for prolonged periods, and failed to comply with the client's reasonable requests for information in violation of rules 1.4(a)(3) and 1.4(a)(4).
As to charge 3, by failing to keep J.B. informed about the status of her late mother's legal matter, which J.B. was positioned to inherit, for approximately seven months respondent violated rules 1.4(a)(3) and 1.4(a)(4). As to charge 4, by failing to timely inform the court and the opposing parties about the death of her client A.B., and by continuing to prosecute the case after her client's death, respondent caused waste of the parties' and the court's time and resources in violation of rule 1.3(a).
As to charge 5, respondent failed to file a Surrogate's Court petition for Limited Letters of Administration after her client R.S.'s death for approximately four years and failed to respond to Surrogate's Court's requests to amend the petition in a timely manner, causing inordinate delay to the continued prosecution of her client's case which violated rules 1.3(a) and 1.3(b). As to charge 6, respondent failed to communicate timely with her late client's spouse, D.P, who was in a position to inherit her husband's personal injury case, regarding the status of the filing the petition for approximately four years, despite D.P.'s repeated attempts to reach respondent or her firm, in violation of rules 1.4(a)(3) and 1.4(a)(4).
As to charge 7, respondent failed to adequately supervise her associate and paralegal to ensure timely and adequate filing of D.P.'s Surrogate's Court petition, causing delays of four years and a failure to amend and finalize the petition in a timely matter in violation of rules 5.1(c), 5.1(d)(2)(ii), 5.3(a), and 5.3(b)(2)(ii).
The parties have stipulated to the following aggravation. In January 2019, respondent received a Letter of Advisement for failure to advise and warn a client of the possibility that respondent would not file a lawsuit on his behalf unless he had a significant injury, resulting in the client's prolonged inability to work. In February 2021, respondent received an Admonition (private discipline) for failure to act with reasonable diligence and promptness, failure to keep a client reasonably informed, and failure to respond to reasonable requests for information, in connection with respondent's handling of a personal injury matter, in violation of rules 1.3(a), 1.4(a)(3), and 1.4(a)(4).
The parties stipulate to the following mitigation: respondent cooperated with the AGC's investigation; her misconduct was not motivated by a desire for personal profit, nor did it involve dishonesty towards the clients, adversaries, or the courts; respondent has been practicing personal injury law on behalf of thousands of clients for the past 40 years and has an overall positive reputation in the legal community; and she includes eight letters (from former judges and clients) attesting to her good character.
Additionally, the parties maintain that respondent aims to reform her practice in the following ways in order to avoid repetition of misconduct herein in the future. Respondent will ensure that she and other firm attorneys are prompted periodically by computer-generated calendaring notices to contact clients so there are no pronounced lapses in communications; and will utilize video conferencing platforms more frequently to enhance the quality of communications with clients. The firm also has provided mobile phones to certain client-facing paraprofessionals and provided clients with their numbers so clients have more options for initiating inquiries directly.
The parties jointly move pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(a)(5) for discipline by consent and ask this Court to impose a public censure. They agree that in essence, respondent's misconduct consisted of neglecting three clients' matters and failing to adequately communicate with clients, opposing parties, and the court regarding the status of and substantive developments in the cases in question. They submit that the imposition of a public censure comports with this Court's precedent, under similar circumstances of lack of diligent and prompt representation, neglect, and failure to communicate, in the absence of dishonesty and venality. They cite as support Matter of Brodsky (153 AD3d 52, 56 [1st Dept 2017]), where the Court opined that "[t]ypically, public censure is imposed where the misconduct is based on negligence or mistake, rather than venal intent" (internal quotation marks omitted); Matter of Salomon (78 AD3d 115 [1st Dept 2010] where censure was imposed for, inter alia, neglect of multiple matters; prior Admonition discounted as aggravation because it was issued after misconduct at issue occurred]); Matter of Lenoir (287 AD2d 243 [1st Dept 2001]) where censure was imposed for, inter alia, neglect of a client matter; two prior Admonitions for neglect of three matters]; and Matter of Marrin (207 AD2d 239 [1st Dept 1995]) where there was censure for neglect of a client matter; three prior Admonitions for neglect. Additional caselaw in this Department also supports the parties' censure request (see Matter of Thomas, 159 AD3d 35 [1st Dept 2018] [censure for neglect of a matrimonial matter, three prior Admonitions]; Matter of Gould, 253 AD2d 233 [1st Dept 1999] [censure for neglect of three matters, prior Admonition for neglect]; Matter of Erda, 209 AD2d 147 [1st Dept 1995] [censure for, inter alia, neglect of three matters and misrepresenting the status of those matters, two prior Admonitions for neglect, significant mitigation]).
In light of respondent's admitted misconduct, the aggravating and mitigating factors presented, and the relevant case law, public censure is an appropriate sanction.
Accordingly, the parties' joint motion for discipline by consent should be granted, the AGC's petition of charges be denied as moot, and respondent publicly censured.
All concur.
Wherefore, it is Ordered that the parties' joint motion pursuant to 22 NYCRR
1240.8(a)(5) for discipline by consent is granted, and
It is further Ordered that respondent, Roberta Dorf Asher, is hereby publicly
censured for her misconduct, and
It is further Ordered that the separately filed petition of charges by the Attorney
Grievance Committee for the First Judicial Department is denied as moot.
Entered: December 2, 2025