[779 NYS2d 37]

In the Matter of ROBERT J. PAPE, JR., an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 17, 2004

## APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Mady J. Edelstein* of counsel), for petitioner.

*Benjamin, Brotman & Associates, P.C. (Susan Brotman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Robert J. Pape, Jr. was admitted to the practice of law by the Second Judicial Department on February 25, 1981 and, at all relevant times herein, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii), immediately suspending respondent from the practice of law, and until further order of this Court, upon the grounds of substantial admissions, made under oath, that he has committed acts of professional misconduct, and that there is uncontested evidence of professional misconduct.

Respondent was a member of the law firm Putney, Twombley, Hall & Hirson, LLP (the firm) until his resignation in September 2002. A disciplinary investigation was commenced in December 2002 based upon respondent's self-report and the firm's letter, accompanied by an auditor's report, notifying the Committee that respondent had converted approximately $45,000 by submitting false expense and petty cash vouchers for purported client and firm-related expenses.

Respondent appeared for a deposition before the Committee in November 2003, at which time he admitted that of his submitted expenses of approximately $150,000 for the period 1997 through 2002, between one quarter and one third were not legitimate, but were actually for his own personal expenses, and that he did not turn over financial records requested by the firm. Although respondent went on to dispute the accuracy of the auditor's report in general, he admitted that no client could properly be charged for his Port Washington Yacht Club expenses for the 1997 junior sail or capital programs, even though he requested and received reimbursement for them. Respondent further testified that in December 1998, he asked a firm bookkeeper that a client's account be "zeroed out" after all time charges and disbursements were paid, and that whatever amount remained was to be paid to his American Express card account. Respondent also conceded that he regularly prepared bills to clients that listed meals as "miscellaneous" for "appearance sake."

The Committee requested that respondent produce certain financial records and documentation on or before December 1, 2003, but respondent, to date, has still not produced missing American Express or First USA statements, nor any of his Visa

bills or NECC statements. Respondent did provide the Committee with a written response in December 2003, which took issue with the auditor's report's total sum for improper reimbursements and included his own lists and descriptions of expenses charged to clients.

In response, the firm submitted a supplemental statement which, inter alia, analyzed a limited sample of respondent's expenses (the first 30 entries for 1997) and found that 19 were confirmed problematic in that the charges to clients were either baseless, duplicative or unsubstantiated by receipts, diary or calendar entries. Moreover, respondent's explanations for certain charges conflicted with other vouchers, raising additional questions as to their validity.

Respondent does not contest his admissions of improper billing, but in mitigation explains that the firm has made restitution to clients in the sum of $184,083 from his capital account at the firm. Respondent also claims that he suffers from depression, which his therapists believe is directly related to his misconduct, yet no medical reports are submitted to support these assertions. Respondent further urges that monitoring, rather than suspension, would be the appropriate sanction and in support, he notes that the Director of the New York City Lawyer Assistance Program believes he is "an excellent candidate for monitoring rather than suspension." However, in addition to the fact that the annexed letter from the Director of the Lawyer Assistance Program says absolutely nothing regarding monitoring or appropriate sanctions, it is not even clear what type of monitoring respondent is proposing.

The Committee has presented clear, uncontested evidence of respondent's professional malpractice which immediately threatens the public interest as demonstrated by respondent's sworn admissions of false billings made during the course of his deposition before the Committee, as well as the auditor's report and other documentation (see Matter of Porcelli, 257 AD2d 124 [1999]).

Accordingly, the Committee's motion pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) should be granted, and respondent suspended from the practice of law, effective immediately, and until such time as the disciplinary proceedings against respondent are concluded, and until further order of this Court.

NARDELLI, J.P., SULLIVAN, WILLIAMS, FRIEDMAN and MARLOW, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.