[809 NYS2d 51]

In the Matter of RICHARD BOTER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 14, 2006

---

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee* (*Jeremy S. Garber* of counsel), for petitioner.

*David Segal* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Richard Boter was admitted to the practice of law in the State of New York by the First Judicial Department on December 11, 2000. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) immediately suspending respondent from the practice of law based upon his lack of cooperation with the Committee, uncontested evidence of professional misconduct involving a "serious crime" proceeding as well as admissions of professional misconduct regarding his IOLA account.

On June 13, 2005, respondent pleaded guilty to a violation of Judiciary Law § 482, an unclassified misdemeanor. This plea arose out of his unlawful employment of a person, not an attorney, for the purpose of soliciting or abetting solicitation of clients from hospital clerks.

By order entered September 7, 2005, we deemed respondent's offense a "serious crime" and directed a hearing be held on the appropriate sanction to be imposed.

On August 31, 2005, respondent was deposed by the Committee and admitted paying one Rafael Flores for soliciting clients. Respondent stated he paid Flores by writing checks on his attorney expense account but that he could not remember the amount. The Committee subpoenaed respondent's bank records and obtained copies of checks paid to Flores totaling $40,850. On October 17, 2005, the Committee wrote to respondent asking him to submit a sworn affidavit within 10 days as to whether these checks were indeed his payments to Flores for steering cases to him. Respondent did not respond, even after the Committee reminded him his response was overdue.

On or about December 29, 2004, respondent's bank notified respondent and the Lawyers' Fund for Client Protection that three of respondent's escrow checks totaling $17,987.82 were dishonored. On February 4, 2005, the Committee commenced a sua sponte investigation and asked respondent to provide copies of bank and bookkeeping records for this account.

On May 13, 2005, respondent appeared with counsel before the Committee for a continued deposition. At that time he failed

to produce any ledgers or records showing to whom the funds in his escrow account belonged, as requested by the Committee. Respondent claimed that his office did make a record of the serial number of incoming settlement checks on the deposit slips and kept a separate list of all checks received and on whose behalf. The Committee asked respondent to produce, within two weeks, those records for the period July 2004 through February 2005. Respondent was also asked during that deposition if he had incorporated his law firm, "Richard Boter & Associates, P.C." since there was no LEXIS record of such an entity. Although respondent claimed that it was a professional corporation with a tax ID number, he stated he would have to contact his accountant to obtain that information.

On May 14, 2005, the Committee served respondent's counsel with a subpoena returnable June 16, 2005, seeking all federal and state tax returns for the professional corporation for the years 2001-2004. Respondent did not produce those records by the return date on the subpoena, or by June 23, 2005, the continuation date of his deposition. On June 24, 2005, the Committee sent respondent's counsel another copy of the subpoena for the tax records and again requested respondent produce the deposit records requested on May 13, 2005 within two weeks. On October 27, 2005, the Committee wrote to counsel for the fourth time regarding respondent's failure to produce any of the aforesaid records.

On April 29, 2005, the Committee received a complaint from a medical service company alleging that respondent failed to honor its medical lien on a personal injury settlement of one of his clients in the amount of $879. The Committee forwarded a copy of this complaint to respondent's counsel on May 10, 2005, requesting an answer within 20 days. Receiving no answer, the Committee sent a second letter, by certified mail, on June 1, 2005. This letter was signed for on June 2, 2005.

On June 6, 2005, a second complaint from the same medical service company alleging the same failure to pay a lien after settlement of another of respondent's client's cases, this time in the amount of $912 was received. This complaint was forwarded to respondent's counsel and the Committee noted that both answers were due within 20 days. Neither a response nor a request for an adjournment was received.

On October 24, 2005, the Committee wrote to respondent's counsel advising that answers to these complaints were five months overdue and the Committee would move for immediate

suspension. On October 27, 2005, the Committee faxed respondent's counsel an additional warning letter, pointing out that, since respondent's closing statement for one action showed he subtracted $450 for a medical lien, it appeared that respondent had converted that amount of the settlement proceeds.

The Committee, on November 3, 2005, made this motion for immediate suspension, returnable on December 6, 2005, based upon, inter alia, respondent's failure to answer these complaints and provide the documents repeatedly requested by the Committee.

Since the filing of this motion, respondent failed to answer five new complaints, two of which concerned checks drawn on his IOLA account returned for insufficient funds and one which alleged a continuing failure to pay a client the proceeds from a personal injury settlement. The remaining two complaints concerned respondent's failure to transfer his files on pending matters to newly retained counsel. All of these complaints were forwarded to respondent with deadlines for a response. All deadlines passed without a response or requests for adjournments.

On November 14, 2005, the Committee was notified by the Lawyers' Fund for Client Protection that five checks drafted on respondent's IOLA account totaling $58,048 had been dishonored. Two of those checks were the subject of aforementioned complaints. The payees of the remaining three checks have not been determined as of yet. On November 15, 2005, respondent was notified, by letter sent by certified mail, that a sua sponte investigation of the escrow checks has been commenced and requested a response within 10 days, as well as requesting detailed bank records for the period May 15, 2005 through November 15, 2005. The certified receipt was signed and returned to the Committee.

On November 18, 2005, respondent's counsel telephoned the Committee and advised that he would be representing respondent in all of these matters. He did not ask for, nor did he receive, an extension of time to respond. No answers for any of these matters were received by the due dates set forth in the Committee's letters.

By affirmation dated December 2, 2005, respondent's counsel opposed the motion for interim suspension for noncooperation. While the affirmation stated that certain documentation was provided to the Committee, that documentation was not complete, and, in some cases, was not requested. For example,

rather than provide the requested corporate tax returns for the years 2001-2004 as the Committee requested, counsel provided respondent's personal income tax returns for the years 2001-2003. Moreover, the bank records provided were incomplete and did not cover the two periods requested by the Committee. Counsel further averred that, when he telephoned the Committee on November 18, 2005, he neglected to ask for an extension of time to answer the five complaints and now sought a three week adjournment.

The Committee properly noted in its reply that the submissions were partial and did not constitute cooperation with their investigation, especially given the amount of time respondent had to produce complete documentation. More disturbing are the statements contained in respondent's opposition papers admitting to "sloppy booking" practices for his IOLA account, which creates an ongoing risk of clients funds being misappropriated. The Committee properly notes that only one of the five dishonored checks have been made good, and that its requests for records regarding the second dishonored check investigations have been ignored. Respondent's explanation that his files were in boxes for a move to a new office, as well as his explanations concerning some of the other pending matters do not change the fact that he has not, to date, produced the requested records. Indeed, if anything, his responsive papers are in many instances, evasive, incomplete and contain admissions of misconduct. The Committee's concerns that respondent's statements that he "intend[s]" to promptly reissue the dishonored checks may result in "rolling misappropriations" should respondent be permitted to continue practicing law during the pendency of these proceedings are well founded, based upon the evidentiary facts contained in the moving and responsive papers.

The Committee has presented clear, uncontested evidence of respondent's professional misconduct which immediately threatens the public interest. We have consistently held that immediate suspension is appropriate for this type of serious professional misconduct (*see Matter of Pape*, 10 AD3d 40 [2004]).

Accordingly, the Committee's motion pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) should be granted and respondent suspended from the practice of law, effective immediately, and until such time as the disciplinary proceedings against respondent are concluded, and until further order of this Court.

Andrias, J.P., Marlow, Gonzalez, Sweeny and Catterson, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as the disciplinary matters pending before the Committee have been concluded and until further order of this Court.