[842 NYS2d 411]

In the Matter of RICHARD BOTER, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 25, 2007

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Jeremy S. Garber* of counsel), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Richard Boter was admitted to the practice of law in the State of New York by the First Judicial Department on December 11, 2000. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

There are two unrelated disciplinary proceedings pending against respondent. The first is a "serious crime" proceeding commenced in July 2005 as a result of respondent's guilty plea to a misdemeanor involving his unlawful solicitation of busi-

ness. The second proceeding involves 51 charges of professional misconduct filed against respondent in November 2005 involving six clients. Before hearings could be completed with respect to each of those proceedings, we granted the Committee's motion seeking respondent's immediate suspension based upon his noncooperation with its investigation and admissions of professional misconduct regarding his IOLA account (*Matter of Boter*, 27 AD3d 137 [2006]). Although respondent admitted to 34 of the 51 charges, hearings were held before a Referee and a Hearing Panel. Both reports sustained all charges and recommended disbarment.

The Committee seeks an order, pursuant to 22 NYCRR 603.4 (d) and 605.15 (e), confirming the findings of fact and conclusions of law set forth in the Hearing Panel's determination and the Referee's report, on both the "serious crime" and formal charges proceedings, and entering an order of disbarment against respondent. Respondent has defaulted on the motion.

The "Serious Crime" Proceeding

On June 13, 2005, respondent pleaded guilty to a violation of Judiciary Law § 482, an unclassified misdemeanor. This plea arose out of his unlawful employment of a person, not an attorney, for the purpose of soliciting or abetting solicitation of clients from hospital clerks.

By order entered September 7, 2005, we deemed respondent's offense a "serious crime" and directed a hearing be held on the appropriate sanction to be imposed.

The Hearing Panel conducted an evidentiary hearing on this matter on December 5, 2005. Its report, dated December 8, 2006, concluded that during his plea allocution, respondent admitted that from March 8, 2004 through May 21, 2004, he unlawfully employed a person for the purpose of soliciting or aiding or assisting or abetting solicitation of illegal business. Additionally, the Panel found that commencing in June 2002 and continuing through his arrest in late November 2004, respondent paid Rafael Flores, a nonlawyer who was active in the El Salvadoran community on Long Island, to refer personal injury clients to him in exchange for payment of approximately $1,000 per referral, either to Flores directly or to one of his companies. These payments totaled between $100,000 and $150,000, which respondent deducted for tax purposes from his office revenues as business or public relations expenses. As of the date of the hearing, respondent had not amended his tax returns to eliminate those improper deductions. Although re-

spondent objected to the Panel's consideration of factors beyond the three-month time period that covered his plea allocution, the Panel properly considered the entire course of his misconduct leading to his guilty plea (*Matter of Rotter*, 241 AD2d 81, 83 [1998]).

In determining the appropriate sanction, the Panel noted in aggravation that although respondent testified he knew at the time that his actions were illegal and wrong, he displayed no remorse and seemed insensitive to interests of and risks to his clients, and he considered personal injury law to be a competitive "business" to be expanded through referrals, with clients treated as commodities. The Panel found his testimony lacking in candor on several issues, particularly on the issue of his falsification of retainer statements filed with the Office of Court Administration (OCA) to conceal his solicitation relationship with Flores. The Panel noted that respondent failed to provide any evidence in mitigation.

On the issue of the appropriate sanction to impose, the Panel determined that respondent's "pattern" of misconduct and deception, "exacerbated by Respondent's apparent lack of remorse, failure to appreciate the gravity of his offenses and failure to present any mitigating evidence" justified a suspension from practice for three or more years. The Panel went on to note that this sanction recommendation was made separately and prior to any consideration of the misconduct alleged in the other disciplinary proceeding involving 51 formal charges.

The Formal Charges Proceeding

On November 21, 2005, respondent was served with a notice and statement of charges citing 51 counts of professional misconduct, which alleged that from July 2001 through November 2005, respondent personally either engaged in, ordered, or approved of his employees' conduct of presenting clients overreaching retainer agreements, settled personal injury cases without his clients' knowledge or consent, instructed his employees and a notary to forge or falsely notarize clients' names on releases and other documents, used falsehoods to persuade clients to withdraw their disciplinary complaints, and neglected client matters. Respondent was also alleged to have commingled business and client funds, failed to keep required records of his attorney escrow account, failed to promptly send clients their settlement checks, failed to timely file retainer and closing statements with OCA, and falsely concealed in those statements his use of nonattorneys to solicit clients.

Respondent submitted an answer, albeit untimely, in which he admitted to 34 of the charges and denied the remaining 17 counts. The Referee conducted three days of hearings during which respondent stipulated to the admission into evidence of the Committee's exhibits and witnesses' statements, and testified in explanation and/or mitigation as to the charges he admitted.

With respect to client Alexandra Bayas, respondent admitted he had arranged for his employees to falsely notarize her genuine signature on two medical records authorization forms and a release form by transferring the image of a notary stamp and signature of the notary on to the forms. He also admitted that he failed to tell Ms. Bayas of the insurance company's settlement offer, that he caused his employees to forge her signature on a release form and falsely notarized it using a photocopy of a notary stamp, and that he failed to notify her when settlement funds were received, all in violation of Code of Professional Responsibility DR 1-102 (a) (3), (4) and (7), DR 7-101 (a) (1) and DR 9-102 (c) (1) (22 NYCRR 1200.3, 1200.32, 1200.46).

With respect to client Aleksandr Panteleiko, respondent admitted that he failed to inform him of an offer of settlement on his personal injury claim, settled the claim without his consent, failed to inform Panteleiko of the receipt of settlement funds, failed to pay him his share of the settlement proceeds for 11 months, paid a medical vendor $1,000 from the settlement funds purportedly to satisfy a medical lien without obtaining a written release from the vendor, failed to inform Panteleiko of an offer to settle his separate property damage claim, settled that claim without Panteleiko's consent, and failed to pay Panteleiko his share of those settlement proceeds in violation of DR 7-101 (a) (1) and (3) and DR 9-102 (c) (1) and (4).

Respondent also admitted that he failed to notify his client Edith Irving of his receipt of a $40,000 settlement check in her favor, that he had client Jorge Gainza sign a retainer agreement that gave respondent the exclusive right to settle his claim without Gainza's approval, that he allowed his employees to forge Gainza's signature on a release form and to affix a false notary statement, and that he neglected this legal matter by failing to file a notice of claim with the City of New York in violation of DR 9-102 (c) (1), DR 1-102 (a) (3), (4) and (7) and DR 6-101 (a) (3) (22 NYCRR 1200.30). Additionally, respondent admitted that he instructed his employees to affix false notary statements on authorizations and claim forms for client Nancy Graciano.

With respect to client Nisim Davydov, respondent admitted having him sign a retainer agreement that gave respondent the right to settle a claim without the client's approval, that he instructed his employees to forge Davydov's name and affix a false notary statement to a release form, as well as knowingly misrepresenting in a letter to an insurance carrier that Davydov had duly executed the release form in violation of DR 1-102 (a) (3), (4) and (7).

Respondent additionally admitted to repeatedly failing to file timely retainer agreements and settlement statements with OCA, and at times filed false statements to disguise the identity of the referring party. He also admitted to failing to identify his IOLA account as such, failing to record deposits into and withdrawals out of that account, failing to keep records showing the source of deposits, the owners and their respective amounts, and failing to make accurate and contemporaneous entries of transactions involving this account in violation of DR 9-102 (b) (2) and (d) (1), (2) and (9). Bank records submitted at the hearing confirmed that on more than 20 occasions between July 2002 and December 2004, respondent improperly transferred thousands of dollars from his IOLA account to his business checking account to cover negative balances in the latter account.

With respect to the 17 charges denied by respondent, the Referee sustained each of those charges, as well as the 34 to which respondent admitted. He recommended the sanction of disbarment. The Hearing Panel, after hearing oral argument, issued a report adopting the Referee's report and recommendation in its entirety. Concerning the charges denied by the respondent, the Panel found those denials to be "insubstantial" and indicative of "a lack of remorse and/or failure to appreciate the gravity of his misconduct." As an example, the Panel cited respondent's denial on the charge that he engaged in overreaching by drafting and causing Ms. Bayas to sign a retainer agreement which permitted him to settle her claim without her approval, while at the same time admitting during the Referee's hearing that he drafted the retainer agreement in question, that she signed it, and that it contained the offending language. The Panel further noted that he admitted preparing retainer agreements with the identical language for Gainza and Davydov. His other denials were similarly contradicted by his sworn admissions. Indeed, the Panel noted that the Referee, throughout his report, identified "with precision similar admissions and other indisputable

evidence that belied [r]espondent's conclusory and inconsistent denials of charges that were amply supported by the record."

As to matters in mitigation and aggravation, respondent did not produce any letters or affidavits attesting to his good character or reputation, and did not testify as to having engaged in pro bono activity or otherwise contributing to the bar or his community. The Referee found his relative youth (32 years old) and his lack of a disciplinary history as factors in mitigation. The Referee further found that, although respondent claimed that he became overwhelmed by the volume of work in his office, he was not a "passive victim" of that situation, since, as a sole practitioner, respondent could control the volume of work he handled. The Panel, agreed, noting that respondent's situation was self-created and within his control. In aggravation, the Referee found that respondent was "motivated by financial gain and quick profits," and his conduct in utilizing overreaching retainer agreements and lying to OCA about the identity of his referrals, "had the self-serving goal of preserving and expanding this lucrative source of clients." Respondent's lack of candor in his testimony was also found by the Referee to be an aggravating factor. Additionally, when questioned during his June 2005 deposition about transfers made from his IOLA account to his business account, respondent exercised his Fifth Amendment privilege against self-incrimination as a result of the investigation by the New York County District Attorney's Office into his law practice. An adverse inference "may be drawn from respondent's invocation of the Fifth Amendment privilege against self-incrimination at his deposition before the DDC." (*Matter of Muraskin*, 286 AD2d 186, 187 [2001].)

The Panel agreed with the Referee's recommended sanction of disbarment, noting respondent engaged in an "egregious pattern of wrongdoing for years," and that the extent and nature of the misconduct warranted disbarment.

We agree that respondent's conduct, taken as a whole, demonstrated a complete disregard for his legal and ethical responsibilities and shows his unfitness to practice law. While respondent is only 32 years old and has no disciplinary history, the breadth of his wrongdoing and the fact that it was not isolated outweigh this limited mitigation. Respondent's deceptive misconduct which included the routine use of false notarizations, forgeries, and filing false retainer and closing statements with OCA warrant disbarment (*Matter of Brooks*, 271 AD2d 127 [2000], *appeal dismissed* 95 NY2d 955 [2000]). This misconduct

was exacerbated by his systematic failure to keep records for his IOLA account, including transfers from his escrow to his business account, the repeated use of overreaching retainer agreements which permitted him to settle cases without the clients' knowledge or consent, and his failure to inform clients of his receipt of their settlement funds (*Matter of Stein*, 189 AD2d 128 [1993]).

In addition, over a two-year period, respondent engaged in a lucrative scheme of accepting client referrals from a nonlawyer in exchange for payments and then concealing the improper referrals in his filings with OCA. For this conduct alone, the Hearing Panel recommended at least a three-year suspension. His failure to cooperate with the Committee's investigation resulted in his interim suspension, and his failure to cooperate with the court-appointed receiver has led to additional motion practice which reflects poorly on his character and fitness to practice law. .

Accordingly, the Committee's motion to confirm the report of the Referee and the Hearing Panel's reports on both the "serious crime" and formal charges proceeding should be granted, respondent is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

ANDRIAS, J.P., MARLOW, GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.