[848 NYS2d 121]

In the Matter of EMANI P. TAYLOR (Admitted as EMANI PAMELA TAYLOR), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 27, 2007

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Andral N. Bratton* of counsel), for petitioner.

*Emani P. Taylor*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Fourth Judicial Department on July 17, 1997, under the name Emani Pamela Taylor. At the times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) immediately suspending respondent from the practice of law based upon her willful failure to cooperate with the Committee in its investigation of allegations of professional misconduct and other uncontested evidence of misconduct which immediately threatens the public interest.

In October 2006, the Departmental Disciplinary Committee was notified by the Grievance Committee for the Second and Eleventh Districts that Justice Michael L. Pesce had issued an order to show cause in the *Matter of John Phillips* (Supreme Ct, Kings County, index No. 108298/00) regarding respondent's role as former guardian of John Phillips, a retired Brooklyn judge. Respondent served as Mr. Phillips's guardian from September 2003 to September 2006 and was permitted to resign as guardian pending a proceeding that sought, among other things, to remove her as guardian. James Cahill, Esq., was appointed successor guardian and within days brought the aforementioned order to show cause alleging, among other things, that respondent had failed to account for significant assets belonging to the guardianship and that she had written numerous checks to herself from the guardianship account without leave or authority from the court.

On October 6, 2006, the Kings County District Attorney's Office opened an investigation into whether respondent had stolen, embezzled or improperly obtained money from the assets of Mr. Phillips (he owned property worth several million dollars). On October 30, 2006, Justice Pesce granted the District Attorney's request to share with the Committee documents and records it had obtained in relation to its grand jury investigation. During November 2006, the Committee had several conversations with the prosecutor's office and the successor guardian and received complete copies of the guardianship bank account records for September 2003 to October 2006, as well as copies of bank rec-

ords for respondent's IOLA account. The guardian, Mr. Cahill, also provided pleadings in the civil proceeding and advised the Committee that the identical issues were pending before Justice Pesce.

On November 28, 2006, the Kings County District Attorney's Office notified the Committee that although the evidence did not demonstrate that respondent committed a crime, "she may well have violated rules governing an attorney's conduct" and, therefore, referred the matter to the Committee to take whatever action was necessary.

Although the Disciplinary Committee often closes disciplinary files pending the completion of civil litigation, here, in light of the seriousness of the allegations against respondent, it decided to keep the file open notwithstanding the civil case pending before Justice Pesce. From December 2006 to May 2007, the Committee, through contact with the successor guardian, monitored the progress of the Kings County civil proceeding.

By May 2007, Mr. Cahill advised the Committee that the civil proceeding was not proceeding apace. Therefore, the Committee wrote respondent on May 22, 2007, requesting her to specifically address allegations of her wrongful taking of funds from the guardianship account and "the fate of the $696,000 from the sale of the 132-136-140 Herkimer Street Property." The Committee enclosed with its letter all prior bank statements and pleadings it had received and asked respondent to answer by June 30, 2007. Respondent failed to respond to the Committee's letter. When the Deputy Chief Counsel to the Committee returned from a medical leave, he wrote to respondent on August 9, 2007 and, noting her failure to cooperate, requested her to fully comply with the Committee's May 22 letter by August 24, 2007, or else she would face a motion seeking her interim suspension.

On or about August 28, 2007, respondent sent the Committee a copy of her "reply to the objections to the Final Accounting" she had submitted in the civil matter on August 4, 2007. That submission, however, was nonresponsive to the specific questions posed by the Committee in its previous correspondence. For example, on the issue of her wrongful taking of fees, respondent referred to a March 25, 2004 order which she "drafted and followed"; however, that order directed the sale of the aforementioned Herkimer Street property and did not address or authorize her to release any funds from the guardianship account for attorneys fees or expenses.

Following receipt of respondent's submission, the Committee learned that, on June 1, 2007, Justice Pesce appointed Seth E. Coen, Esq., to prepare and submit a final accounting for the period during which respondent served as guardian—September 2003 to September 2006. In his affirmation attached to a motion for judicial settlement of final account dated June 20, 2007, Mr. Coen detailed respondent's misconduct, mistakes and neglect. He began by stating, "[d]ue to the combination of incomplete records, poor recordkeeping and the lack of cooperation from the former Interim Guardian of the Property, Emani P. Taylor, the Final Account as submitted represents a reconstruction to the best of my ability from the proofs and records available to the preparer." Most relevant to the Committee's present motion is schedule G attached to Mr. Coen's motion, which was prepared at the court's direction and shows that respondent, without court order, helped herself to $327,491.23 in the guardianship account from October 24, 2003 to August 8, 2006. Of that amount, more than $200,000 was in the form of checks written to herself as "retainer" or "legal fees," more than $69,000 was issued either to herself or to "cash" with references to expenses, and more than $57,000 were withdrawals made without the use of checks. The Committee contends that on its face, respondent's activities violated Code of Professional Responsibility DR 1-102 (a) (4), (5) and (7) and DR 9-102 (a), (b) (2) and (e) (22 NYCRR 1200.3, 1200.46).* Attached as exhibit H to the Committee's present motion is a copy of respondent's August 10, 2007 affirmation of legal services she filed with Justice Pesce wherein she requested a total of $853,100 in legal fees. Nowhere in this affirmation did she advise the court that she had already withdrawn from the guardianship account for her own use more than $327,000.

Accordingly, by certified letter dated September 12, 2007, the Committee confronted respondent with Mr. Coen's final account, her August 10, 2007 affirmation of legal services, and the fact that her previous submission was nonresponsive to the Committee's previous questions and gave her

"a final opportunity to address the clear allegations

---

* Mr. Coen's final account also reveals that four family members of respondent were paid money from the guardianship account allegedly for services provided. For example, respondent's mother was paid as a self-styled "nurse in charge" of Mr. Phillips. The final account also indicates possible missing pension deposits and establishes that for the three years that respondent was guardian, no tax returns were filed, to the financial detriment to Mr. Phillips's estate.

that 1) You converted to your own use without authority $327,491.23 of funds belonging to the Guardianship and 2) You failed to advise the Court in your August 10, 2007 Affirmation of Legal Services that you had already withdrawn the above amount for, among [other] things, purported 'legal fees.'

"I advise that your failure to furnish a full, satisfactory response to these issues by October 1, 2007 will result in this office's filing a motion, pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) for your immediate[,] indefinite suspension from the practice of law based both upon your lack of cooperation and uncontested evidence of misconduct."

The Committee now seeks respondent's immediate suspension from the practice of law based upon her pattern of noncooperation and uncontested evidence of her serious professional misconduct that threatens the public interest. The Committee contends that respondent's unresponsiveness to specific inquiries regarding her alleged wrongful taking of funds can only be interpreted as a deliberate and willful attempt to impede the Committee's investigation (*Matter of Spiegler*, 33 AD3d 187 [2006]). Furthermore, the Committee maintains that respondent's uncontradicted conversion of guardianship funds without court authority and her failure to advise the court of her previous taking of "legal fees" constitutes uncontested evidence of professional misconduct warranting her immediate suspension pursuant to 22 NYCRR 603.4 (e) (1) (iii), regardless of the fact that a civil proceeding is still pending (*Matter of Tannenbaum*, 16 AD3d 66 [2005] [attorney who took estate money for "fees" was immediately suspended]; *Matter of Pape,* 10 AD3d 40 [2004]).

In her affirmation, dated October 29, 2007, in opposition to the Committee's motion, respondent, who is appearing pro se, denies converting guardianship funds to her own use. Rather, she claims that: (1) she reasonably relied upon the March 25, 2004 order signed by Justice Pesce (and drafted by respondent) as full authorization to withdraw funds from the guardianship account in unspecified amounts for legal fees; (2) she disputes Mr. Coen's finding that she depleted the sum of more than $327,000 from the guardianship account; (3) she claims the Kings County court was already on "judicial notice" that she had withdrawn funds for legal fees, therefore she did not have

to mention it in her subsequent affirmation for legal services; and (4) the issue of reasonableness of her actions is already before Justice Pesce and therefore this Court should not take any action.

Respondent claims that she believed she had authorization to pay herself and other "workers" guardianship funds because at a court conference on February 11, 2004, Justice Pesce told her to draft an order about the sale of real property and "provide for some payment of fees." She then points to the March 25, 2004 order she drafted entitled "Order Directing Sale By Publication and For Attorney Fees." However, a reading of that order shows that Justice Pesce gave permission for the sale of the Herkimer Street property and directed respondent to:

> "provide to this Court an accounting of the *disperse* [*sic*] *of funds which shall include but not limit* the execution [of] all documents necessary in connection with the renovation, of the garden floor, parlor floor, roof and basement of the Incapacitated Person's home. . . and the compensation to appropriate health care professionals for the personal companion as well as for the private 24 hour private care and housing for the Incapacitated Person" (emphasis added).

Although not one word of the order addresses the issue of attorney's fees, respondent avers that it was her "interpretation that this Order permitted Respondent to include herself in the laundry list of persons and authority 'which includes but not limits' " the people to be paid. However, any interpretation that the court order gave respondent unfettered permission to withdraw guardianship funds strains credulity.

Next, although respondent disputes Mr. Coen's finding that she depleted the sum of more than $327,000 from the guardianship account she provides this Court with no alternative figure. Indeed, the Committee points out, in reply, that when it wrote respondent on May 22, 2007, it enclosed complete copies of her bank records pertaining to this matter and asked her for an explanation "for all checks written by (you) to (yourself) on both the Guardianship and IOLA account." Yet, respondent has never given an explanation nor has she even attempted to address this issue in her current opposition papers. Likewise, respondent's assertion that the court was on "judicial notice" of funds she had taken which were then in dispute and, therefore, she did not have to advise the court again in her application for

legal services is very disturbing. Indeed, the fact that such funds were taken from the guardianship account by respondent was first brought to the court's attention by the successor guardian and Mr. Coen, not by respondent. Respondent cannot simply file an application for attorney's fees, after the fact, without first advising the court of the amount she had already awarded herself.

Respondent also contends that this Court should take no action since the issue of her "reasonableness" is already before Justice Pesce. The Committee has already explained that where, as here, misconduct is clear and is an immediate threat to the public, the Committee will seek an interim suspension despite ongoing civil litigation. Furthermore, the Committee notes that respondent has not cooperated with the Committee's investigation (although she claims she has by forwarding a copy of her reply to Mr. Coen's final accounting) and it is uncertain when the Kings County proceeding will be resolved.

Respondent states that a trial was scheduled for October 30, 2007 and she is suspicious of the timing of the instant motion. She complains further that the information sought by the Committee is duplicative of the information sought by the successor guardian Mr. Cahill, and it appears that the Committee has been "spoon-fed" documents by Mr. Cahill. She also states that she requested but was denied a chance to meet with Mr. Coen, rather, she was asked to answer 33 questions that were sent by mail. Thus, she claims, his final accounting is inaccurate. Finally, respondent asserts that she does not pose a danger to the public and presently does not hold any client funds for any pending matter.

An attorney who is the subject of an investigation by the Disciplinary Committee of professional misconduct may be suspended from the practice of law, pending consideration of charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon the attorney's failure to comply with any lawful demand of this Court or the Departmental Disciplinary Committee made in connection with any investigation or other uncontested evidence of professional misconduct (22 NYCRR 603.4 [e] [1] [i], [iii]).

Although respondent claims she has cooperated with the Committee's investigation, she has not. Respondent did not answer the Committee's May 22, 2007 letter which asked her to explain her withdrawal of funds from the guardianship account even

though she was provided with all of the pertinent bank documents she needed to answer those questions. Nor did she respond to a follow-up letter. The only document she did provide was nonresponsive insofar as it was her reply to the objections in the final accounting in the Kings County matter.

In addition, the final accounting by Mr. Coen (although based upon "incomplete records [and] poor recordkeeping") provides uncontested evidence that respondent has committed misconduct that threatens the public interest (*Matter of Goldman*, 7 AD3d 18 [2004]; *Matter of Adelman*, 263 AD2d 160 [1999]). At a minimum, respondent withdrew funds from the guardianship account as legal fees without court permission, at worst, she intentionally converted guardianship funds. While respondent was entitled to be compensated for the work she performed for three years, self-help to guardianship funds is not the way to proceed. Moreover, the final accounting raises several other questions regarding respondent's tenure as guardian including why several of her relatives were compensated for "services" they allegedly provided, where did the escrow deposit from the sale of estate property go, whether pension and/or Social Security monies are missing from the guardianship estate, and why respondent failed to file tax returns for the estate.

Accordingly, inasmuch as respondent has failed to meaningfully controvert the evidence of professional misconduct against her, and based upon her lack of cooperation with the Committee's investigation, the Committee's motion should be granted and respondent suspended from the practice of law, effective immediately, and until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court (22 NYCRR 603.4 [e] [1] [i], [iii]).

ANDRIAS, J.P., NARDELLI, GONZALEZ, SWEENY and MALONE, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.