Matter of Park (2025 NY Slip Op 03531)

Matter of Park

2025 NY Slip Op 03531

Decided on June 10, 2025

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 10, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Present — Hon. Sallie Manzanet-Daniels
Justice Presiding

Motion No. 2024-04195, 2024-05275|Case No. 2021-00479|

[*1]In the Matter of Inho A. Park an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Inho A. Park (OCA Atty Reg. 2853182), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Inho A. Park, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on October 27, 1997.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Andrea B. Carter, of counsel), for petitioner
Michael S. Ross, Esq., for respondent.

Per Curiam 

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Inho A. Park, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on October 27, 1997.
Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Andrea B. Carter, of counsel), for petitioner
Michael S. Ross, Esq., for respondent.
Motion Nos. 2024-04195, 2024-05275 — November 18, 2024
In the Matter of Inho A. Park, an attorney
Per Curiam
Respondent Inho Andrew Park (also known as Andrew Park) was admitted to the practice of law in the State of New York by the First Judicial Department on October 27, 1997, under the name Inho A. Park. At all times relevant to this proceeding, he has maintained a law office within the First Department.
In February 2021, the Attorney Grievance Committee (AGC) filed a Petition of Charges alleging that respondent: failed to properly supervise a subordinate attorney; falsely notarized a client's affidavit without the client being present before him; falsely informed a client, who was in Korea, that it was illegal in the United States for the client to record their telephone conversation and that if the former client came back to the U.S., respondent would report him to a prosecutor; and practiced law under the name of "Andrew Park," which is not the name under which he was admitted. The AGC and respondent then moved jointly for discipline by consent under the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8 (a)(5) and requested that respondent be publicly censured.
By unpublished order dated September 29, 2021, this Court denied the parties' joint motion for discipline by consent and directed the parties to proceed in accordance with 22 NYCRR 1240.8 (a)(5)(iv). By November 4, 2021 answer, respondent admitted some of the factual allegations but denied the charges. In or about December 2021, the parties filed their respective statements of disputed and undisputed facts pursuant to 22 NYCRR 1240.8 (a)(2).
In February 2022, the AGC served respondent with a supplemental petition alleging four additional charges of professional misconduct, to wit: that respondent offered his subordinate associate increased financial compensation and job security in exchange for falsely representing to the AGC that it was the associate who improperly notarized the client's signature on the affidavit at issue in violation of Rules of Professional Conduct (22 NYCRR 1200.0) (RPC) rules 8.4(a), 8.4(c), 8.4(d), and 8.4(h). By April 14, 2022 answer, respondent denied the additional charges and in May 2022, the parties submitted a joint supplemental statement of disputed and undisputed facts.
A Referee was appointed to conduct a hearing on the charges; to file a report making findings of fact, and conclusions of law; and to recommend whether a disciplinary sanction was appropriate. In April 2023, the Referee [*2]convened the hearing at which the AGC called two witnesses, respondent's former associates Lana Song and Steve Jungsuk Park, and introduced documentary evidence. Respondent testified in his defense, called one witness and introduced documentary evidence. At the conclusion of the hearing, the parties submitted post-hearing memoranda addressing liability. By December 26, 2023 report, the Referee sustained all but one of the charges.
As to charge one (notarizing an affidavit purportedly signed by a client without the client being present or signing the affidavit before him in violation of RPC rule 8.4[c]) and charges six, seven, eight, and nine (all which allege that respondent encouraged his associate to make false statements to the AGC and to take responsibility for the alleged notarial misconduct underlying charge one in violation of RPC rules 8.4[a], 8.4[c], 8.4[d], and 8.4[h]), the facts of misconduct are as follows.
Respondent is the sole principal of his law firm. Attorney Lana Song testified that it was the firm's practice to send documents to clients, many of which spoke little if any English, with the instruction that they sign the document and return it to the firm. Respondent would then notarize the client's signature outside of the client's presence.
Attorney Steve Park corroborated Song's testimony regarding respondent's practice of notarizing clients' signatures outside of the clients' presence. Park also testified as to an incident in which he signed a client affidavit, purportedly with the client's authorization, and then presented the affidavit to respondent, who notarized the signature. The affidavit was then filed as part of opposition papers to a motion for summary judgment.
In or about April 2018, the client filed a complaint alleging that his signature on the affidavit had been forged by respondent. Respondent called Park into his office to discuss the client's complaint, at which time Park told respondent that he had signed the client's name to the affidavit after purportedly speaking with the client.
Thereafter, respondent and Park had several discussions regarding the client's complaint. Park recorded their June 9 and 13, 2018 conversations, in which respondent repeatedly admitted that he improperly notarized the client's signature outside of his presence. Respondent urged Park to "take the fall" for the false notarization with the AGC for the good of the firm and promised to raise Park's salary from approximately $70,000 to $250,000 a year for doing so. In the event of Park's suspension, respondent told Park that he would employ him at one of respondent's car wash businesses and allow Park to secretly continue to practice law by answering motions for respondent.
The June 13, 2018, conversation concluded with Park and respondent each agreeing to take responsibility for their own actions. Park then provided respondent's counsel with an affidavit stating that: he had translated the affidavit into Korean for the client, who [*3]acknowledged its accuracy and told Park to sign his name to it because he did not want to come to the office from Nassau County where he worked; after Park signed the client's name to the affidavit, he brought it to respondent who notarized it; and that he did not tell respondent that he had signed the client's name to the affidavit.
In his verified answer to the client's complaint, respondent, through counsel, stated that he "has no recollection whatsoever of having notarized this, or any other, signature without the party being present." Respondent's answer went on further to state:
"[Respondent] assumes that, if the notarization occurred in the way Mr. Jungsuk Park states, he [respondent] may have been in the midst of multiple tasks when Mr. Jungsuk Park came into his office to notarize the document and, presumably, he would have believed that [the client] was either in the room or outside the room and was otherwise so distracted that the notarization process was mishandled. If that occurred, [respondent] offers his profound and sincere apologies."
On or about March 18, 2019, Park resigned from respondent's firm. In January 2021, the AGC issued Park an admonition for: signing the client's name to the affidavit at issue; presenting it to respondent for notarization without the client being present; and submitting the affidavit, which was purportedly from the client, to the court in violation of RPC rules 8.4(a) and 8.4(c).
At the time the AGC admonished Park, it was not aware of the June 9 and 13, 2018 recordings; the recordings were divulged in or about October 2021 when respondent commenced a fee dispute lawsuit against Park and Song.
In support of his claim that Park forged his notarial signature on the client's affidavit, respondent called a forensic document examiner who testified that it was probable that Park forged respondent's notarial signature on the affidavit. In making its determination, however, the examiner did not review any handwriting exemplars from Park in which he had signed respondent's name for comparison and Song testified that she recognized the notarial signature on the client affidavit as that of respondent.
As to the recorded conversations, respondent testified, in relevant part:
"I'm glad I was able to fight through my temptation and didn't do it. And, ultimately, we both agreed it's just a bad idea, that we should stop."
* * *
"I told him, because I'm the boss, and I told him that whatever I said, that I take it back. I apologized for saying it. And that he agreed, and I, that we should tell the truth based upon what we understand to be true in our affidavit. And, fortunately, he agreed. And that's how we ended the conversations."
* * *
"[U]ltimately, giving money or not is my decision. He cannot force me to give it. So I decided not to give it to him. So it was my decision, not his."
As to charge four, which alleged that respondent, without basis, told a client who recorded their telephone conversation that [*4]he would report the client to criminal authorities and the client would be arrested if he came to the United States in violation of RPC rule 8.4(h), the facts of misconduct are as follows.
Respondent represented his client in a personal injury matter and determined that he did not have a meritorious case. In August 2017, respondent filed a stipulation discontinuing the client's action. In November 2019, the client telephoned respondent from Korea under the mistaken belief that respondent settled his case without remitting the recovery to him. During the phone call, the client told respondent that he was recording the call, and respondent told him, incorrectly, that "[r]ecording a phone call is illegal in this country. I don't know whether it is in Korea. If you visit the USA, I will have to report it to authority"; "[i]f you stay in Korea there is no problem. But if you arrive at JFK airport, then I will report your arrival to the prosecutor"; "[i]f you come to the states, I will contact the prosecutor"; "[i]t is illegal in the USA. I don't know about Korea"; [o]nce you come to the USA, please contact me. I will report it to the prosecutor. Recording a phone call is illegal, and it is not a wise thing to record a conversation with a lawyer"; and "[b]e careful when you come to JFK. You could end up in jail."
In his July 8, 2020 answer to this client's complaint, respondent stated in pertinent part that "[h]e did not eventually make any report to law enforcement, partially because he had verified that no crime had been committed." Before the Referee, respondent admitted that he made the above statement, and that he made a mistake because he thought recording without consent was illegal. However, he later went on to maintain his incorrect assertion that it is illegal to record a telephone conversation in New York.
As to charge five, which alleged that respondent practiced law under the misleading names of "Andrew Park," "Law Firm of Andrew Park," or "Andrew Park, PC" when he is admitted to the practice of law in New York and registered with OCA under the name of "Inho A. Park" in violation of RPC rule 7.5(b), the facts of misconduct are as follows.
Following a sua sponte investigation, and by letter dated October 29, 2015, the AGC informed respondent that it harbored concern that he was practicing law "under the name 'Law Offices of Andrew Park, P.C.'" but "according to the records of the Office of Court Administration, [respondent was] admitted to the practice of law as 'Inho A. Park.'" The AGC dismissed the sua sponte matter with guidance pursuant to section 605.6(e)(2) of the Rules of the Appellate Division, First Department (22 NYCRR), advised respondent to "pay careful consideration to th[e] dismissal," directed respondent's attention to RPC rule 7.5(b), and advised respondent that he was expected to "amend the name of [his] law practice so that it comports with the name under which [he was] admitted."
Notwithstanding the AGC's directive, respondent [*5]indicated that he did not research RPC rule 7.5(b), continued to register with OCA under the name of "Inho A. Park" and practiced under the name "Andrew Park." In 2017 respondent changed his name with OCA to reflect "Inho Andrew Park" so there would be "less misleading information." However, in his 2019/2020 OCA registration respondent returned his name back to "Inho A. Park" in the OCA database and Song testified that when she made her appearance in court, it was for "Andrew Park P.C." or "Law Offices of Andrew Park, P.C." Respondent agreed with Song's testimony and conceded that "if someone was looking for him and searched for Andrew Park in the OCA registration website they would not find him since he is registered under another name."
In the determination dated December 26, 2023, the Referee: sustained charges one and six through nine, finding that the AGC had met their burden and proved that respondent "notarized [his clients] signature without [the client] being present in violation of RPC 8.4(c)," "induced Steve Park to make false statements to the [AGC] in violation of RPC 8.4(a),(c)[,](d)[,] and (h)," and that the testimony of respondent's expert witness was not credible; sustained charge 4, finding that respondent's inconsistencies impugned his credibility and that by falsely informing his client that he would be arrested and prosecuted for recording a phone call, respondent engaged in activity that adversely reflected on his fitness as a lawyer; and sustained charge five, finding that respondent's testimony and the documentary evidence clearly established that "respondent violated RPC 7.5(b)."
As to sanction, the AGC argued that disbarment was warranted given the seriousness of the misconduct underlying charges six through nine. In aggravation, the AGC cited three prior admonitions it issued to respondent: in 2011 based on his 2009 guilty plea to harassment in the second degree for making threatening telephone calls to a rival attorney's paralegal; in 2014 based on his neglect and failure to act with reasonable diligence and promptness in a client's personal injury matter; and in 2017 for an advertising violation and failure to act with reasonable diligence and promptness in a personal injury matter and the neglect of a separate matter. The AGC also cited respondent's failure to heed its 2015 warning to correct his misleading attorney registration (ABA Standards for Imposing Lawyer Sanctions standard 9.22[a]).
Respondent requested that the Referee recommend a "tempered sanction," maintaining that: the proposed false statements he urged his then associate to make to the AGC do not support an aggravated sanction as no such statements were actually made; his "conduct was isolated and aberrational in the context of his long career, . . . he is not a danger to the public and . . . there is no likelihood of any future misconduct by him"; he presented evidence of good character via references; and the record includes mitigation, namely, cooperation [*6]with the AGC, remorse, and the remoteness of his prior misconduct (ABA Standards for Imposing Lawyer Sanctions standards 9.31, 9.32)
By August 2, 2024 report, the Referee recommended that respondent be disbarred, finding the record replete with examples of respondent's attempts to mislead the AGC, as well as his lack of acceptance of responsibility and remorse for his misconduct. The Referee found that respondent's request for a "tempered sanction," was premised on inapposite case law and there was insufficient mitigation to support respondent's request. Specifically, the Referee found that "[t]he evidence of respondent's desire to mislead the [AGC] is formidable" and that respondent "refused to accept any responsibility or express remorse for his conduct."
As to notarizing his client's affidavit, the Referee found that "[r]espondent fabricated three distinct versions of the . . . notarization in an attempt to avoid discipline." The first version was presented in the June 9 and 13, 2018 recorded conversations in which respondent attempted to bribe Steve Park to "take the fall," a second version was presented in his answer to the charges where he claimed he had "no recollection whatsoever of having notarized" the signature without the client present, and a third version was presented during the hearing where respondent claimed that the signature was not his handwriting after "looking at the documents more carefully." Despite respondent's fabrications as to the events that unfolded, in the June 9 and 13, 2018 recordings, he admitted numerous times that he notarized [his client's] signature in [his] absence." Based on the above evidence, the Referee found that respondent "lacked credibility . . . , refused to take responsibility for his misconduct, offered no remorse or contrition for his misconduct, refused to be candid and cooperate with the disciplinary process[,] . . . portrayed himself as a victim during the hearing" and that respondent's "motives throughout the disciplinary process were selfish and dishonest."
As to the second client matter, the Referee noted that "respondent made multiple false statements during the hearing, refused to accept responsibility for his threatening behavior to a client, displayed no remorse or contrition for his misconduct, [and] refused to cooperate with the [AGC]." The Referee also noted that respondent had "engaged in similar conduct when prosecuted by the District Attorney's office by pleading guilty to Harassment under Penal Law Section 240.26, and [was] admonished by the Appellate Division for engaging in the same behavior."
As to the misleading name of respondent's law firm, the Referee found that respondent practicing under a misleading name was not "by itself overly disconcerting, given the similarity in the names." However, it found respondent's actions, when combined with his "refusal to act according to the [AGC's] specific instruction regarding [RPC rule] 7.5(b), . . . more consequential." Specifically[*7], the Referee found that "respondent's willingness to oppose the [AGC's] guidance without consulting [RPC rule] 7.5(b), or understanding the reasoning behind the rule while minimizing the consequences of his decisions, display[ed] a refusal on his part to accept responsibility or display a lack of remorse or contrition for his misconduct."
The Referee also found that respondent "failed to cooperate with the [AGC], displayed a willingness to mislead the [AGC] and a willingness to shift the blame to the complaining witnesses," all which militated against public censure. Lastly, the Referee found that respondent's character letters did not mitigate the charges against him and the cases respondent cited did not support his claim that his discipline should be tempered in any way. Based on the foregoing, the Referee recommended disbarment as the appropriate sanction.
The AGC now moves for the Referee's reports to be confirmed in full and maintains "that a review of the liability and sanction reports, as well as the record, persuasively demonstrates that the charges should be sustained, and that respondent should be disbarred."
Respondent cross-moves, arguing that the Referee's liability findings should only be affirmed insofar as charge 2 was not sustained, which the AGC does not contest. Respondent further contends that the Referee's liability findings sustaining charges one and four through nine, as well as his disbarment recommendation should be disaffirmed. Respondent maintains that the record evinces that it was Park who signed his client's name to the affidavit at issue and forged respondent's notarial signature thereon. Respondent further asserts that although the recordings show that respondent initially entertained Park's representation that respondent had notarized the affidavit outside of his client's presence, he later learned Park's representation was false. Thus, respondent contends that the representation in his July 10, 2018, answer to the AGC, that he had no recollection of having notarized a client's signature outside of the client's presence, was accurate.
Respondent further asserts that the Referee incorrectly rejected the testimony of his forensic document examiner and that it was of no import that the examiner was not provided with direct samples of Park having signed respondent's name because the materials the examiner reviewed included samples of Park's signature. Respondent also contends that the Referee should not have discounted the examiner's testimony, in favor of respondent's numerous admissions during the June 9 and 13, 2018 recorded conversations, because the examiner's testimony was based upon her review of the documents and not respondent's statements. As to the recorded admissions cited by the Referee, respondent maintains that "[t]he context of the conversation makes it clear that [r]espondent was speaking hypothetically and did not recall actually notarizing . . . [his client's] Affidavit, but was merely saying that [*8]ifhe didnotarize the Affidavit without the client being present, he would have assumed that it was the client's signature and not known that it was a forged signature."
Respondent further argues that there is no credible corroboration for Lana Song's and Steve Park's testimony that it was respondent's regular practice to notarize clients' signatures outside of the clients' presence. With respect to Park specifically, respondent renews his attempts to impugn Park's credibility and further maintains that the Referee erroneously sustained charges one, and six through nine, because there was no actual attempt by respondent to follow through with any payment to Park. Respondent maintains that the "criminal attempt standard is applicable to disciplinary proceedings" because they are "quasi-criminal" in nature and that he "was not on fair notice that a mere conversation about a course of conduct that is never undertaken could somehow result in discipline."
As to charge four, respondent argues that the Referee should not have sustained this charge because respondent believed that his client's recording of the telephone conversation was illegal, and his mistaken belief and statements made upon his misunderstanding of the law should not result in a violation of the Rules. As to charge five, respondent contends that the Referee should not have sustained this charge because the name of his law firm is not misleading and he "provided the public with sufficient information to identify him."
As to the Referee's disbarment recommendation, respondent maintains that his character letters "make clear that the findings against [him] are an aberration" and in any event there are factors in mitigation, namely respondent's cooperation, remorse and the remoteness of prior offenses (22 NYCRR 1240.8[b][2]). Lastly, respondent contends that an "aggravated sanction" is unwarranted in this case because no actual false statements were made to the AGC and public censure cases support a "tempered sanction" in this matter.
The AGC opposes respondent's cross-motion and contends that: the record firmly evinces that respondent solicited Park to take the blame for falsely notarizing the client affidavit in exchange for financial compensation; the Referee correctly discounted the testimony of respondent's expert witness given respondent's recorded admissions that he notarized the client affidavit; as to charge four, "[r]espondent vainly attempts to shift the focus of the wrongdoing from false and improper threats made to a client to his mistaken belief regarding the legality of a surreptitiously recorded conversation"; and, as to charge five, "[d]espite being previously informed by the [AGC in 2015] that utilizing 'Andrew Park' in lieu of his OCA registered name, 'Inho A. Park', was misleading, [r]espondent continued to utilize 'Andrew Park.'"
Here, the AGC has met its burden as the Referee's misconduct findings are fully supported by the record. Respondent's attempted solicitation [*9]of his associate Steve Park to falsely represent to the AGC that it was Park who notarized the client affidavit outside of the client's presence in exchange for increasing Park's annual salary from $70,000 to $250,000, and, if Park were suspended, allowing him to continue to secretly practice law for respondent's firm while purportedly employed by one of respondent's car wash businesses, warrants disbarment. Respondent's additional misconduct, namely, making a baseless threat of arrest against a client if he entered the U.S. and his practicing law under a misleading name notwithstanding the AGC's 2015 warning to cease doing so, as well as his three prior admonitions, further demonstrate that he is unfit to continue in the practice of law.
We find that the sanction of disbarment is warranted as respondent's conduct demonstrates a complete disregard for his legal and ethical responsibilities (see Matter of Toback, 199 AD3d 99 [1st Dept 2021]; Matter of Boter, 46 AD3d 1 [1st Dept 2007]; Matter of Brooks, 271 AD2d 127 [1st Dept 2000], appeal dismissed and lv dismissed 95 NY2d 955 [2000]).
Accordingly, the AGC's motion to confirm the Referee's report should be granted and respondent disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately, and until further order of this Court. Respondent's cross-motion should be granted to the extent that the Referee's liability finding that charge two was not sustained is confirmed.
All concur.
Wherefore, it is Ordered that the motion by the Attorney Grievance Committee for the First Judicial Department for an order, pursuant to 22 NYCRR 1240.8(b) and 603.8-a(t), confirming the report of the Referee, is granted, and respondent Inho A. Park is disbarred and his name stricken from the roll of attorneys in the State of New York, effective immediately, and until further order of this Court; and
It is further Ordered that respondent's cross-motion is granted to the extent that the Referee's liability finding that charge two was not sustained is confirmed; and
It is further Ordered that, pursuant to Judiciary Law § 90, respondent, Inho A. Park, is commanded to desist and refrain from (1) the practice of law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that, respondent, Inho A. Park, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
It is further Ordered that if respondent, Inho A. Park, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith.
Entered: June 10, 2025[*10]