[850 NYS2d 19]

In the Matter of LEOPOLD KAPLAN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 3, 2008

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Eileen J. Shields* of counsel), for petitioner.

*Harold Samuel Herman* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Leopold Kaplan was admitted to the practice of law in the State of New York by the First Judicial Department on December 9, 1957. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i), (iii) and (iv) immediately suspending respondent from the practice of law based upon his lack of cooperation with the Committee, uncontested evidence of professional misconduct, and his willful failure or refusal to pay money owed a client as demonstrated by a judgment. The Committee further asserts that respondent's failure to renew his attorney registration with the Office of Court Administration (OCA) and pay the biennial registration fee is an independent basis for discipline under Judiciary Law § 468-a (5).

The Committee received four complaints from three former clients who retained respondent and paid him fees for legal work that he failed to complete. The details of the complaints are as follows:

In late 2004/early 2005, Sam Mirian filed two disciplinary complaints against respondent alleging that he had retained respondent in 2002 to prosecute two unrelated actions to collect debts, one in Suffolk County and one in New York County. The complaint alleged respondent neglected those matters and failed to respond to Mirian's repeated requests for progress reports.

In January 2005 the Committee sent both complaints to respondent, who filed an untimely answer on April 6, 2005. Respondent explained that at the times Mirian requested updates, he could not find the files because he was "going through periods of illness." He stated he was undergoing tests to determine if he had cancer and, if confirmed, he would seek counsel to complete these matters but, if he was found cancer free, he would complete them himself. He could not explain why the Suffolk County matter was dismissed pursuant to CPLR 3216 but promised to immediately file a notice of trial to complete the litigation. Committee records show that a notice of trial was never subsequently filed and there was no other evidence of further activity. With respect to the New York County matter, respondent explained that it was discontinued pursuant

to stipulation because New York did not have jurisdiction and, with Mirian's permission, he would retain counsel in New Jersey to commence the action at his own cost and expense.

When the Committee asked for a progress report in July 2005, counsel for the Committee was advised that respondent had suffered a stroke and was in a rehabilitation center. Respondent was released from the center in mid-September 2005 and advised the Committee that several attorneys had been making court appearances on his cases. After the Committee wrote respondent questioning whether his physical and mental health affected his professional responsibilities, he assured the Committee that he would finish Mirian's two matters and would keep it apprised of his work. When the Committee asked respondent to provide statements from his doctors regarding his capabilities in carrying out his duties as an attorney, he submitted a brief letter from his cardiologist stating that respondent had "fully recovered" from an "embolic CVA" and was ready to return to work without restrictions. In a December 2005 letter to the Committee, respondent stated he hoped to retire on or about June 30, 2006 and would advise what steps he would take to phase out his practice.

In March 2006, the Committee received a complaint from Lynn Landesman stating that she paid respondent $5,000 in April 2005 to handle an estate worth approximately $62,000 and that respondent did little on the case for nine months after she retained him. As a result, she discharged him and requested a refund of the fee. After respondent called her and pleaded for another chance, she agreed to permit him to continue to represent her and gave him the information he claimed he needed to order a genealogical search. When she reviewed a copy of the letter respondent sent to the genealogist and saw the information was incorrect, she discharged him and filed a disciplinary complaint.

In his June 15, 2006 answer to the complaint, respondent did not deny Ms. Landesman's allegations and promised to refund the $5,000 fee the following week, once a fee he was expecting came in. However, a week later, respondent failed to refund the fee and the Committee notified respondent that he had also failed to make any progress on Mirian's two debt collection matters as promised. The Committee scheduled a deposition on all three matters for July 5, 2006. When respondent refunded the $5,000 fee to Ms. Landesman on the eve of the deposition, the Committee agreed to reschedule the deposition and give him 30 days to retain counsel.

Having heard nothing from respondent regarding counsel for two months, the Committee wrote to respondent advising him that he had until September 15, 2006 to retain counsel. Approximately two weeks after that date, respondent gave notice he had retained counsel and on November 1, 2006, respondent's counsel wrote to the Committee enclosing respondent's case files, stating that respondent had informed him that he had "settled all the cases."

Respondent's deposition was scheduled for December 6, 2006. On December 5, the Committee received a faxed letter from respondent's cardiologist stating that respondent had reported "recurrent dizziness, weakness and general malaise" and therefore the doctor felt he should remain at home and postpone all meetings or proceedings until he could evaluate him on the first available date, December 26, 2006.

In July 2006, Mirian commenced a legal malpractice action against respondent. Although respondent had promised to settle the claim for $21,500, he paid nothing toward the proposed settlement. Respondent failed to cooperate with discovery requests in the malpractice action, resulting in a motion to compel, returnable on December 15, 2006. Respondent appeared by counsel on the return date and the motion was withdrawn pursuant to a stipulation providing that respondent would have until January 11, 2007 to pay $23,000 to Mirian in settlement of the action. If respondent failed to pay that amount, Mirian would be entitled to a judgment for $32,500. Respondent did not pay and a judgment was issued against him on February 1, 2007, in the amount of $33,130, representing $32,500 plus costs. The Committee was advised by Mirian that respondent was in default of payment and failed to appear for a court-ordered deposition on that matter on March 15, 2007.

By letter dated March 22, 2007, the Committee advised respondent that an attorney's willful failure or refusal to pay a client's judgment could result in an interim suspension and asked for an explanation as to his failure to pay the Mirian judgment. Respondent was reminded that he had not submitted his attorney registration renewal to OCA for the 2006/2007 biennial period. Respondent's counsel advised the Committee that respondent expected a fee to come in and payment of both would be made.

Respondent was served by the Committee with a subpoena for a deposition scheduled for May 30, 2007. On May 29, respondent's counsel telephoned the Committee and advised

that respondent was not going to appear, that he had spoken to respondent who sounded very bad and that respondent said his head hurt where he had his stroke.

On June 6, 2007 the Committee received a complaint from Chieko Koriyama alleging that respondent failed to handle her matrimonial matter for which she paid him $5,000 in April 2003. The complaint alleged that since approximately December 2006, she had been asking respondent to provide an accounting of the work he had performed on her case, that she wished to terminate the representation and had requested a refund of the fee.

Respondent's answer, submitted on June 29, 2007, admitted his failure to keep several appointments made with Ms. Koriyama and averred that he would refund the entire fee within 10 days. No payment has been made. Respondent's answer also stated he would be 80 years old in 2008, that his health prevented him from keeping up with his work, and that he was turning over files to other attorneys to complete.

Respondent has not disputed the allegations in the complaints that he failed to perform the work necessary on the various matters and that he promised to refund the legal fees. Except for the Landesman matter, he has not refunded any fees. While claiming poor health, respondent has provided little documentation in support. Respondent's stroke in July 2005 does not explain his failure to pursue these matters from 2003 to 2005, or from 2005 to the present. This stroke cannot be blamed for his failure to appear for a deposition before the Committee or to pay his biennial attorney registration fee. While not unmindful of respondent's age, we note that he continues to hold himself out as an attorney and has collected fees for legal work he has failed to complete.

The Committee has presented clear, uncontested evidence of respondent's professional misconduct which immediately threatens the public interest (*Matter of Ryans*, 37 AD3d 40 [2006]). While respondent initially appeared to cooperate with the investigation, his subsequent dilatory tactics in responding to Committee requests and failure to appear for two scheduled depositions constitutes failure to cooperate with the Committee, warranting interim suspension (22 NYCRR 603.4 [e] [1] [i]; *Matter of Benzing*, 43 AD3d 163 [2007]).

Moreover, his failure to challenge the allegations that he engaged in professional misconduct by neglecting legal matters (Code of Professional Responsibility DR 6-101 [a] [3] [22 NYCRR

1200.30]) and failure to refund legal fees, except in one instance, (DR 2-110 [a] [3] [22 NYCRR 1200.15]) constitutes uncontested evidence of professional misconduct (22 NYCRR 603.4 [e] [1] [iii]). Additionally, his willful failure or refusal to pay money owed to a client, which debt is demonstrated by a judgment (*Matter of Muraskin*, 286 AD2d 186 [2001]) constitutes grounds for suspension (22 NYCRR 603.4 [e] [1] [iv]). Finally, the respondent's failure to renew his registration and pay his biennial fees provides an additional basis for discipline (Judiciary Law § 468-a [5]; *Matter of Hest*, 308 AD2d 85 [2003]).

Of note is the fact that respondent has not submitted opposition papers to the Committee's petition.

We have consistently held that immediate suspension is appropriate for this type of serious professional misconduct (*see Matter of Pape*, 10 AD3d 40 [2004]).

Accordingly, the Committee's motion pursuant to 22 NYCRR 603.4 (e) (1) (i), (iii) and (iv) should be granted and respondent suspended from the practice of law, effective immediately, and until such time as the disciplinary proceedings against respondent are concluded, and until further order of this Court.

TOM, J.P., SAXE, FRIEDMAN, GONZALEZ and SWEENY, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.