[901 NYS2d 33]

In the Matter of Jimmie L. Engram, an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, May 13, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Jimmie L. Engram was admitted to the practice of law in the State of New York by the First Judicial Department on August 6, 1974. At all times relevant to this proceeding respondent has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee now seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii), immediately suspending respondent from the practice of law until further order of the Court based upon his failure to cooperate with the Committee's investigation of six complaints filed against him and a notice by the Lawyers' Fund for Client Protection (the Fund) of a dishonored check drawn on respondent's IOLA account, as well as uncontested evidence of professional misconduct which threatens the public interest. Respondent has not submitted opposition to this motion.

In July 2008, the Committee received a notice from the Fund that a check drawn on respondent's IOLA account for $869.10 had been dishonored. Despite several requests by the Committee, made over a period of months, for a written explanation for this dishonored check, respondent failed to respond until the Committee advised him that his continued failure to respond could result in an interim suspension. By letter dated November 17, 2008, respondent explained that the overdraft was the result of his mistaken use of his Chase IOLA account instead of his Chase business account to make a payment by telephone to cover an overdraft involving his personal account at HSBC and that his IOLA account had no client funds in it at the time that the check was dishonored. Respondent attributed his delay in responding to his involvement in a federal trial.

The Committee determined that it was necessary to obtain respondent's escrow records but repeated requests by the Committee to respondent for these records went unheeded. The Committee then obtained a subpoena duces tecum from this Court to procure respondent's Chase IOLA records. Once those escrow records were received, the Committee's investigative accountant created Excel spreadsheets in order to reconcile respondent's account, which were then forwarded to respondent with a letter asking him to supply certain missing information. This letter also warned respondent that his continued failure to

submit the bank records could, without more, result in his interim suspension. Another follow-up letter to respondent went unanswered.

Thereafter the Committee had respondent served with a subpoena duces tecum, directing him to appear at the Committee and to bring bank records. Respondent did not appear for his deposition, nor did he contact the Committee. The Committee wrote to respondent giving him another opportunity to appear on a specific date, and warned that his failure to appear would compel the Committee to move for his interim suspension. On the scheduled deposition day, the Committee received a letter by fax from respondent's accountant, along with various ledger documents for respondent's IOLA account which the accountant had prepared, and a representation that respondent would be forwarding bank statements under separate cover. The Committee received from respondent the bank statements previously requested and his "general ledger, checkbook ledger." Using these documents, the Committee's accountant commenced a reconciliation of the IOLA account, but found that there was still some missing information. The Committee forwarded the updated spreadsheets to respondent asking him to fill in the columns marked "Client Matter" for every deposit and disbursement that respondent had yet to identify, and to return the information within 10 days. When the deadline passed and no response was received, the Committee again wrote respondent noting the resumption of his noncooperation and that if it continued, his interim suspension would be sought. Although respondent was given 10 more days to cooperate, no response or contact was made.

While the Committee was investigating the dishonored check matter, six clients filed complaints against respondent.

In May 2009, the Committee received a complaint from Guy Minto alleging that he had retained respondent about two months earlier for $2,500 to help him with a "straw" real estate deal, but that respondent had failed to return his phone calls. The Committee made repeated contact with respondent, seeking an answer to the complaint, but respondent did not answer until months later, after the Committee served him with a subpoena directing him to appear and testify. On the morning of the deposition, respondent sent a fax to the Committee consisting of a letter in which he stated that he could not appear "on only two (2) days notice," and asking to reschedule the deposition to a later date. Respondent also answered Min-

to's complaint, explaining that he was retained by Minto on March 5, 2009 and after spending the entire month of March going through almost 100 pages of documents, he was about ready to complete a summons and complaint when his secretary informed him that Minto wanted his money back. Respondent stated that he did, in fact, try to return Minto's telephone calls but to no avail.

The Committee agreed to reschedule respondent's deposition and obtained a subpoena for respondent's appearance for October 22, 2009 regarding both the dishonored check matter and the Minto complaint. On the day of the deposition, respondent faxed a letter to the Committee asking for an adjournment, stating that he was in the process of retaining counsel. Respondent never appeared for that deposition and did not ultimately retain counsel.

Patricia Johnson filed a complaint in June 2009 alleging that she had retained respondent to handle an estate matter in December 2008 for $1,500, but that she had not heard from him since, despite writing and calling his office. Elsie Brown filed a complaint in September 2009 claiming that she had retained respondent in May 2009 to represent her in a contract dispute arising out of a real estate transaction (she was the seller), but that she could not reach respondent for about two months.

The Committee twice sent copies of both complaints to respondent but he did not answer the complaints. Consequently, the Committee obtained a subpoena duces tecum directing respondent to appear for a deposition with respect to the Johnson and Brown complaints and for him to bring the related client files. On the morning of the scheduled deposition respondent did not appear and, instead, faxed a letter stating that he needed another adjournment to retain an attorney. While respondent had previously been granted an adjournment of the deposition in order to retain counsel, respondent now claimed that counsel had "backed out" and he needed "one final adjournment" because he expected to retain someone "after the holidays."

The Committee granted an adjournment, on which date he was either to appear for a deposition or have counsel contact the Committee, and again warned that his failure to cooperate could lead to a motion for his interim suspension. Respondent did not appear on the adjourned date or otherwise contact the Committee. In a last attempt to secure respondent's appearance, the Committee sent a letter on January 26, 2010, giving respondent to February 8, 2010 to either appear for his deposi-

tion or to have counsel contact the Committee, and warning him that the Committee would have "no alternative" but to seek his interim suspension if his noncooperation persisted. Respondent did not appear on January 26 or communicate with the Committee.

During the investigations of these matters, the Committee reopened a complaint against respondent from Yvonne Davis which was originally filed in September 2009. Davis had alleged that she had retained respondent to handle an estate planning matter for her in her capacity as a trustee/attorney-in-fact and that respondent had essentially neglected the matter, failing to respond to her communications. Less than one week after Davis filed her complaint, she submitted a letter withdrawing it based on the fact that respondent had contacted her and taken the necessary actions in her case, thus, the Committee had closed the file. However, on October 16, 2009, Davis filed a new complaint against respondent in connection with the same matter, alleging the same problems of neglect and lack of communication. The Committee treated this letter as a request for reconsideration pursuant to 22 NYCRR 605.7 (c) and, on December 7, 2009, a member of the Committee directed that the investigation be reopened. Thereafter, the Committee wrote respondent directing him to answer Davis's complaint within 20 days. No response was submitted.

In January 2010, Deryck Solomon filed a complaint against respondent. Because he was stationed in Baghdad, Iraq with the United States Army Corp of Engineers, the complaint had been drafted for him by his attorney. According to the complaint, Solomon was concerned that respondent may have misappropriated approximately $30,000 of Solomon's funds which were being held in escrow pursuant to a settlement of a lawsuit involving a real estate matter in which Solomon was a defendant. The terms of the settlement called for the reimbursement to Solomon of any capital gains tax that may have been due as a result of Solomon's sale of the property, and pending the determination of the amount of the capital gains tax due, respondent was to hold $30,000 in escrow. Solomon stated that once the tax amount was determined, the plaintiffs' attorney made a number of unsuccessful attempts to contact respondent to discuss the issue. In June 2009, Solomon replaced respondent with Michael Mondschein, Esq., who was similarly unsuccessful in contacting respondent and who did not receive a response to a June 26, 2009 demand letter seeking the release of Solomon's $30,000 in escrow funds.

Respondent was sent a copy of Solomon's complaint but he did not answer. In order to ascertain the integrity of Solomon's funds, the Committee obtained a subpoena for additional records of respondent's IOLA account through February 28, 2010. Based upon a review of all of the documentary evidence, including the records and ledgers submitted by respondent's accountant, the Committee found that respondent's IOLA account did not have a sufficient balance as of February 28, 2010, and, that therefore, respondent had misappropriated Solomon's funds. Specifically, the records demonstrate that respondent deposited Solomon's $30,000 into his IOLA account on August 5, 2008 and no disbursements were made to either Solomon or the plaintiffs in the settled lawsuit through February 28, 2010. Moreover, although the balance in the IOLA account should have been, at a minimum, $30,000 through February 28, 2010, the bank balance fell below that amount on May 7, 2009, when respondent wrote a check payable to "cash" in the amount of $115,000, which he also endorsed, resulting in an escrow balance of only $1,950.91 (since respondent never provided certain information regarding his escrow account, it is not known for what purpose respondent used the $115,000 check). Respondent issued two additional IOLA checks payable to himself, one on May 8, 2009 for $1,800, and the other on July 15, 2009 for $140, leaving a balance in the account of $10.91.

The final complaint that is the subject of this motion was filed in February 2010 by Jubae Mujahid, who alleges a conflict of interest in that respondent represented her in several real estate transactions at the same time that he represented another party in the transactions, and that respondent also had personal business interests in those transactions, some of which he did not disclose to Mujahid. Respondent was sent a copy of this complaint on March 9, 2010, and was given 10 days to submit a response but no answer was received.

Immediate suspension on an interim basis is appropriate where there is uncontested evidence of professional misconduct (22 NYCRR 603.4 [e] [1] [iii]; *Matter of Benzing*, 43 AD3d 163 [2007]). The Committee has presented uncontested evidence that indicates respondent has neglected legal matters entrusted to him in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3] [now Rules of Profes-

sional Conduct (22 NYCRR 1200.0) rule 1.3 (b)]),* represented a client despite a conflict of interest in violation of DR 5-105 (22 NYCRR 1200.24 [now Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.7]), and mishandled and misappropriated escrow funds in violation of DR 9-102 (22 NYCRR 1200.46 [now Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15]). Additionally, respondent's failure to cooperate with the Committee's investigation of these matters and to respond to this motion demonstrates a willful noncompliance with a Committee investigation and threatens the public interest warranting an interim suspension pursuant to 22 NYCRR 603.4 (e) (1) (i) (*see Matter of Kaplan*, 49 AD3d 107 [2008]).

Accordingly, the motion pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) should be granted and respondent suspended from the practice of law, effective immediately, and until such time as the disciplinary proceedings against respondent are concluded, and until further order of this Court.

GONZALEZ, P.J., TOM, RENWICK, DEGRASSE and ABDUS-SALAAM, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded and until further order of this Court.

---

* Both the prior and current ethics rules are cited because some of respondent's alleged misconduct occurred during the time period when the old rules were in effect and some after April 2009 when the current rules went into effect.