Matter of Miller (2019 NY Slip Op 01192)





Matter of Miller


2019 NY Slip Op 01192


Decided on February 19, 2019


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 19, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, Presiding Justice, Dianne T. Renwick, Angela M. Mazzarelli,
Ellen Gesmer, Anil C. Singh, Justices.


M-4342

[*1]In the Matter of Mayne Miller, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Mayne Miller, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Mayne Miller, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on May 3, 1982.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Naomi F. Goldstein, of counsel), for petitioner.
Respondent pro se.



PER CURIAM


Respondent, Mayne Miller, was admitted to the practice of law in the State of New York by the First Judicial Department on May 3, 1982. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Judicial Department.
By notice of motion dated August 27, 2018, the Attorney Grievance Committee (the Committee) seeks an order pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a)(3) immediately suspending respondent from the practice of law until further order of the Court, based upon respondent's failure to comply with a lawful demand of the Court or the Committee in an investigation or proceeding.
On March 30, 2017, the Committee received a complaint from a former client of respondent who had retained respondent to represent him in a holdover proceeding involving a rent stabilized apartment. The client alleged that, inter alia, in 2015, pursuant to respondent's directions, he deposited a total of $7,656.12 into respondent's bank account to be surrendered to the court to satisfy a use and occupancy order but respondent never transmitted the money to the court. Subsequently, the client hired new counsel and settled the matter. The client repeatedly requested a refund but respondent did not comply.
On April 17, 2017, the Committee provided respondent with a copy of the complaint and requested an answer within 20 days. When no answer was received, the Committee wrote respondent again, advising that, if he did not provide an answer within 10 days, it would "have no alternative but to make an appropriate application to the Appellate Division" and cited the interim suspension rule for failure to cooperate and applicable cases. On June 12, 2017, the Committee received a handwritten letter from respondent stating, as relevant, that he had recently lost many files and 15 years worth of emails but anticipated filing a "preliminary" response to the complaint after the July 4 holiday.
On or about July 12, 2017, the Committee received a notice of motion from respondent, seeking disqualification of the attorney that the client at issue had retained after discharging respondent. In a supporting affidavit, respondent outlined various hardships he was experiencing including eviction from his office and residence, and deletion of more than 600,000 stored emails due to his nonpayment of a monthly storage fee. Respondent addressed some of the client's allegations of misconduct but sought additional time to properly respond. As relevant, respondent disclosed:
"I have paid Bank of America an $80 fee to obtain my bank records from 2015 to ascertain if there were any deposits from that period that might have been made by [the client at issue]. Our agreement was that he would make payments to a branch of Bank of America that was convenient to him, and I gave him my account number for that purpose, asking him to be sure to write his initials on the deposit slip so that when I saw the deposit on my bank statement, I could identify the deposit as his. He admitted that he never wrote his initials on any of the deposits he claimed to have made[]. My bank records from 2015 . . . showed only two deposits, totaling $500, that were made at out-of-state branches of Bank of America."
On July 14, 2017, the Committee wrote respondent explaining that it did not have jurisdiction over such a motion to disqualify. The letter asked whether respondent intended the Committee to consider the motion as his answer to the complaint, and stated that, if not, his answer was due "promptly" since it had been due on July 5, 2017. On August 14, 2017, respondent delivered a handwritten letter to the Committee, again citing to his alleged hardships and requesting an additional three-week adjournment to prepare a "proper answer." Two days later, respondent mailed the Committee a typed letter asking that the complaint be dismissed because it was not written on the Committee's complaint form, denying the client's allegations, offering some defense, describing his living and working conditions, and asking for an additional [*2]three-week adjournment to file a complete documented answer. Respondent noted that he had "no way of knowing who made the [out of state] deposits without initials on the deposit slips" which the client refused to do and, if he was required to pay the amount the client alleged he owed him, it would be impossible since his "illness and the consequent disruption of my practice have left me virtually insolvent."[FN1]
By an August 22, 2017 email, the Committee asked respondent to authorize the Committee to treat his August 16 letter as his answer to the complaint. However, by an August 23 email, respondent declined. Respondent also clarified that his prior request for a three-week adjournment was "the absolute minimum" unless he were to neglect his other clients and risk malpractice claims. By return email sent August 23, the Committee directed respondent to submit his answer "without further delay" and that the email should "not be deemed an expressed or implied consent to your request for an extension of your time to answer."
On September 13, 2017 the Committee wrote respondent again, noting his failure to submit an answer, and advising that if he did not provide an answer by September 22, 2017, the Committee would "be constrained to initiate suspension proceedings on the basis of your failure to cooperate." By letter dated November 2, 2017 the Committee gave respondent to November 13 to answer or it "may have no alternative but to make an appropriate application to the Appellate Division." Instead of answering, by letter dated November 13, 2017, respondent once again noted his lack of access to files and emails due, in part, to his eviction from his office, his having to relocate his residence, and asked for an additional three months to reconstitute his files and prepare his answer.
On November 30, 2017, respondent was personally served with a judicial subpoena directing his appearance on December 27, 2017. When the Committee learned that respondent intended to seek an adjournment, the Committee, by letter of December 1, 2017, preempted that request, denied the adjournment, detailed respondent's long history of adjournments, outlined what he could expect to be questioned about at the deposition (namely, respondent's alleged misconduct with the client's funds), and, again, gave notice of the possibility of an interim suspension if he failed to cooperate.
On December 27, 2017, respondent appeared, pro se, for his deposition during which he variously testified that he had not filed his answer because he was too busy with a client, he had retrieved partial bank records but only had a "cursory" look at them and did not want to send copies of them to the Committee with a partial answer, and that he needed more time to submit a complete, final answer. Respondent acknowledged that he had directed the client at issue to deposit money into his business account to be used for the use and occupancy payments, but if the client did not initial the deposit slips, they would likely have been credited to another client. Respondent testified that he understood his responsibility to cooperate with the Committee and the course of action it would pursue if he did not comply with its requests; respondent was then given one final, four-week extension to file an answer.
A day after the deposition, the Committee emailed respondent, reaffirming that the final extension for receiving his answer was January 24, 2018 and reminding him about specific items he was asked, on the record, to produce with his answer. Respondent emailed back, seeking additional time beyond the four-week extension, and stating that, until he solved his scanner problems and had time to scan the court file, he would be unable to comply with the Committee's request.
On January 25, 2018, respondent emailed the Committee acknowledging receipt of the deposition transcript and complained that there was never an official response to his request to dismiss the complaint on the ground that the client did not use the proper complaint form.
On June 19, 2018, the Committee wrote respondent, advising that if he failed to submit a [*3]response by June 29, 2018, it would seek his interim suspension. When respondent did not reply, the Committee proceeded with the application now before us.
Under the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.9(a), an attorney who is the subject of a Committee investigation may be suspended from the practice of law on an interim basis upon a finding that the attorney has engaged in conduct immediately threatening the public interest. A basis for such a finding includes an attorney's failure to "comply with a lawful demand of the Court or a Committee in an investigation or proceeding" (22 NYCRR 1240.9[a][3]).
Here, the Committee argues that respondent has failed to comply with a lawful demand by it, since he is the subject of a disciplinary investigation alleging that funds entrusted to him by a former client were never deposited with the court and, that, for over a year, respondent has disregarded the Committee's requests to submit an appropriate documented response to this complaint.
Respondent opposes the Committee's motion and argues, inter alia, that his current clients will be harmed by his immediate suspension, that his noncompliance has resulted from his office problems, that the goal of the former client may actually be to make a claim against the Lawyers' Fund for Client Protection and not a grievance claim, and that the former client actually owes respondent unpaid fees.[FN2]
We find respondent's arguments unavailing. While respondent did attend his deposition, he has still failed to submit a formal answer and turn over the bank records he promised to supply at his deposition. As we have held in other cases, respondent's partial cooperation does not excuse his failure to fully comply with the Committee's requests (see Matter of Moreno, 149 AD3d 65, 69 [1st Dept 2017]; Matter of Reid, 137 AD3d 25, 28 [1st Dept 2016]; Matter of Mainiero, 98 AD3d 255, 258 [1st Dept 2012]). In addition, while respondent has offered excuses for his noncompliance, we find these excuses unconvincing in light of his lengthy period of noncompliance (see Moreno, 149 AD3d at 69; Matter of Evans, 142 AD3d 122, 125 [1st Dept 2016]; Matter of Kaplan, 49 AD3d 107, 111 [1st Dept 2008]). Despite respondent's arguments that his clients will be harmed by his suspension, respondent's actions have "threatened the public interest in the effectiveness of the attorney disciplinary system" (Moreno, 149 AD3d at 70 [internal quotations marks omitted]). Since the Committee repeatedly warned respondent of the consequences of his noncompliance, his conduct must be seen as willful (see Matter of King, 145 AD3d 75, 79 [1st Dept 2016]).
Accordingly, the Committee's motion should be granted and respondent immediately suspended from the practice of law pursuant to 22 NYCRR 1240.9(a)(3).
All concur.
Order filed. [February 19, 2019]
Ordered that the motion is granted and respondent is hereby suspended from the practice of law in the State of New York, effective the date hereof, and until further order of this Court.



Footnotes

Footnote 1: Respondent is 80-years-old and in or about 2014, he had a heart attack.

Footnote 2: After defaulting on the motion, a Justice of this Court granted respondent an extension, and allowed him to submit opposition papers by January 4, 2019.